Breitel, J.
Plaintiffs question the power of the City of New York to regulate by a particular local ordinance the use of fuel burners and refuse incinerators to control the emission of aerial pollutants. The original plaintiffs and several hundred interveners, all apartment house owners, sought a declaratory judgment to annul and enjoin enforcement of the ordinance on the ground of its unconstitutionality. Special Term granted summary judgment in part in favor of defendant municipal officials, holding that there was power to enact the ordinance and that it was constitutional in design and application. A trial, however, was ordered on the limited issue of whether the time schedule for compliance by owners was unconstitutionally too short (58 Misc 2d 920). The Appellate Division unanimously modified by eliminating the trial as to the time compliance schedule (34 A D 2d 811).
The prinicpal contentions are: the State has pre-empted the regulation of air pollution; the local ordinance is impossible of compliance within the time schedule provided; the upgrading of equipment is disproportionately costly; the daily accumulative penalties are confiscatory and would discourage justifiable re sis *218 tance to the ordinance; and the provisions for summary sealing of incinerators and fuel burners are violative of constitutional limitations. Plaintiffs particularly urge that the effect of the ordinance in reducing air pollution would be either nonexistent or so minimal as not to justify the extraordinary expense imposed on property owners.
Other arguments are made but do not require present discussion. They have been adequately treated at Special Term or have insufficient substance.
The amended ordinance is a detailed statute aimed at multiple dwelling uses of fuel and refuse burners (Administrative Code of City of New York, §§ 892-1.0 to 897-2.0, as amd. by Local Laws, 1966, No. 14, and Local Laws, 1968, No. 14 of City of New York). It requires the commissioner of air pollution control to issue operating certificates for fuel burners and incinerators (§§ 892-4.2, 892-4.3, subd. b). Owners must conduct such tests as the commissioner deems necessary to determine the compliance of equipment with the new standards (§ 892-4.1, subd. c). The law sets new standards for lower sulphur content of fuel. It requires the owners to install sulphur emission monitoring and recording devices, and to forward the records to the commissioner (§ 893-1.0, subd. b, par. 1). Installation of apparatus in the fuel burners, entailing substantial outlays, was required within two years (§ 892-4.2, subd. b). Varying with the number of apartments dependent upon an incinerator, owners are required to install additional apparatus within staggered periods up to two years (§ 892-4.3, subd. b, pars. 1, 2, 3, as amd.). After compliance dates have passed, the commissioner is empowered to seal any equipment for which permits have not been obtained as explicitly required by the ordinance, and, in addition, but only after notice and hearing, to seal any other equipment which is emitting harmful substances (§§ 892-6.0; 892—4.3, subd. e). A fine from $25 to $200 a day and imprisonment up to 60 days may be imposed for each day of improper operation of an incinerator (§ 892-4.3, subd. f).
The ponderous argument made that pollution caused by incinerators and oil burning equipment is of trivial effect in the overall solution of a massive problem is fallacious. Accepting the contention that there is only a 2% daily contribution of pollutants by private apartment houses, this contribution still *219 aggregates over 186 tons per day. Moreover, government is and must be entitled to attack massive problems piecemeal, and to select those most susceptible areas which permit of the least destructive effect on the economy (see 2 Cooley, Constitutional Limitations [8th ed.], p. 1231; United States v. Carolene Prods. Co., 304 U. S. 144, 151). Thus, while, by common belief, the automobile is the grossest offender in air pollution, the only immediate corrective, evidently, would be its banishment, a socially and economically intolerable solution worse than the condition to be cured.
This is not to say that there are not serious questions raised as to the wisdom and the practicality of the undoubtedly rigorous measures required by the ordinance. But the ultimate conclusion must be that these are questions within the domain of legislative and executive discretion because they involve choices among alternative reasonable courses of action based on the presently limited knowledge of the extent of the pollution evil and methods of cure. So long as there is reasonable basis in available information, and rationality in chosen courses of conduct to alleviate an accepted evil, there is no constitutional infirmity (United States v. Carolene Prods. Co., supra, at pp. 151-154; Borden’s Co. v. Baldwin, 293 U. S. 194, 209-210; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, esp. pp. 80-81; People v. Charles Schweinler Press, 214 N. Y. 395, 406-408). It is in this context that some may accord respect to arguments made by appellants to the effect that the city in a panic has adopted measures which will not achieve what is hoped or, if so, at a greater cost than necessary. Yet, the rebuttal is that such arguments, however cogent they may appear to be, do not affect the constitutionality of the ordinance. Efforts at solution of serious problems will not wait on perfect knowledge or the application of optimal methods of alleviation to the exclusion of trial and error experimentation.* Unfortunately, the extent of the pollution problem, its life-threatening acceleration, and the high economic and social costs of control are exceeded in gravity by only one or two other domestic or even international issues.
*220 With respect to the effect of cumulative penalties, were this a novel proposition, plaintiffs perhaps might have a substantial contention. However, the courts have long sustained a pyramiding of penalties as valid means of control (People v. Spencer, 201 N. Y. 105, 111; Suydam v. Smith, 52 N. Y. 383, 388-389). But, on the other hand, if the requirements of the statute were impossible to satisfy, cumulative penalties would be confiscatory, as any penalty would be invalid because irrational (see City of Buffalo v. New York Cent. R. R. Co., 125 Misc. 801, affd. 218 App. Div. 810, affd. 271 N. Y. 658). Thus, barring a showing of impossibility of compliance, this argument lacks weight. Moreover, as a practical matter, the property owners are not so vulnerable to oppressive action, and the authorities have indicated that there is no likelihood that cumulative penalties would be invoked to obstruct landlords who wish to litigate the issue or who establish that, for one reason or another, they are unable to comply within the statutory time schedules.
On another somewhat similar issue plaintiffs urge that the regional shortage of pollution control engineers and related service firms would have prevented many multiple dwelling owners from complying with the ordinance had all sought at one time to comply with the ordinance within its time limits. Because plaintiffs do not contend that they, rather than all owners, found timely performance impossible, they fail to show that they are aggrieved. Statutes will not be struck down unless the plaintiffs are actually aggrieved (Headley v. City of Rochester, 272 N. Y. 197, 205-206; see, also, People v. Merolla, 9 N Y 2d 62, 68-69).
It is not without practical significance, if not theoretical relevance, that more than two and four years have passed since the respective local laws were enacted, in which time much, if not all, of the change-overs required could have been accomplished. In the meantime, plaintiffs have made no effort to comply. Hence, it is not persuasive, on the limited issue affecting the compliance time schedule, that, as plaintiffs argue, performance is not possible because all could not have performed within the original time schedules in the amended ordinance. Plaintiffs may have been reasonable in resisting enforcement of the ordinance for other reasons, but not because all members of the class could not have complied.
*221 While it is true that compliance in particular buildings will involve the outlay of varying substantial sums in the range of $3,500 to $14,000, or even $19,000, to upgrade fuel burners and incinerators, the amounts only seem enormous when totaled as a whole for the city. Related to the particular properties, considering the serious health hazard represented by aerial pollution, there is no showing that the amounts are disproportionate to the capital investment or the benefits to be obtained. Equally significant outlays have been required in the past from owners of multiple dwellings and sustained as constitutional (see, e.g., Tenement House Dept. v. Moeschen, 179 N. Y. 325, 330; Health Dept. v. Rector of Trinity Church, 145 N. Y. 32, 40-43). At a time when weather agencies in the city report almost daily that the air is unsatisfactory or unhealthy, it is hardly permissible to allow aerial pollution to continue untrammeled because the necessary outlays to avoid the condition would cut into profit margins or require “ hardship ” adjustments in controlled rents. In any event, there is no patent unconstitutionality involved and the balance to be struck is a legislative and not a judicial obligation.
Also unsound is plaintiffs’ argument of State pre-emption. The Environmental Conservation Law was recently enacted, effective July 1, 1970 (L. 1970, ch. 140). Section 10 provides that: “ It shall further be the policy of the state to improve and coordinate the environmental plans, functions, powers and programs of the state, in cooperation with the federal government, regions, local governments ”.
Paragraph 21 of section 14 empowers the newly created department to: “ Encourage activities consistent with the purposes of this chapter by advising and assisting local governments, institutions, industries and individuals.” These provisions explicitly recognize that local units of government are intended to function in the air pollution area.
Lastly, the argument that the summary sealing of equipment, without notice and hearing, is unconstitutional is lacking in substance. The ordinance authorizes summary sealing only in the case of” specified classes of fuel burners and incinerators for which permits have not been obtained and whose operation has thus become unlawful (§§ 892-6.0; 892-4.3, subd. e). Moreover, a hearing for the affected owner, even after the summary seal *222 ing, obtainable by judicial proceedings of a summary or plenary character, is sufficient to insure constitutionality so long as the health hazard to be controlled is sufficiently widespread and grave, and immediate action is desirable (Ewing v. Mytinger & Casselberry, 339 U. S. 594, 599; North Amer. Stor. Co. v. Chicago, 211 U. S. 306, 315, 317, 320-321; Phillips v. Commissioner, 283 U. S. 589, 596-597; City of Newburgh v. Park Filling Sta., 273 App. Div. 24, 27, affd. 298 N. Y. 649; 1 Davis, Administrative Law Treatise, § 7.08; see, also, relevant to the need of notice to one who has knowledge of a nuisance by reason of operation or control, Matter of 300 West 154th St. Realty Co. v. Department of Bldgs. of City of N. Y., 26 N Y 2d 538, at p. 543).
As to other equipment of classes not specified in the ordinance, there must be notice and hearing before the offending equipment may be sealed on the ground that it is emitting noxious substances. Also, if it had been true, as it is not, that the ordinance failed to provide for adequate notice and hearing, the requirement would be implied (Matter of Buttonow, 23 N Y 2d 385, 393; Matter of Hecht v. Monaghan, 307 N. Y. 461, 468-469).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed.

 That the effort has not been unrewarding in stimulating inventive and strenuous schemes to control pollution is demonstrated by an article which appeared in a trade journal, The Real Estate News, for September, 1970, at p. 12 et seq.