Melvyn KAUFMAN, 77 Water Street, Inc., 77 Water Street Associates, 127 John Street Fee Associates, 127 John Street Associates, 437 Madison Avenue Fee Associates, and 437 Madison Avenue Associates, Plaintiffs,

v.

The CITY OF NEW YORK, the Environmental Control Board of the City of New York, Edward I. Koch, in his capacity as mayor of the City of New York, Harvey W. Schultz, in his capacity as Commissioner of the Department of Environmental Protection, and Charles M. Smith, Jr., in his capacity as Commissioner of the Department of Buildings, Defendants.

No. 88 Civ. 5124 (RJW).

United States District Court, S.D. New York.

May 24, 1989.

Shea & Gould, New York City (Milton S. Gould, Robert J. Ward, Jonathan M. Landsman, of counsel), for plaintiffs.

Corporation Counsel for City of New York, New York City (Gabriel Taussig, Albert G. Fredericks, Julian Bazel, Asst. Corp. Counsel, of counsel), for defendants.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs have challenged the laws and regulations enacted and administered by defendants regarding asbestos removal or encapsulation during building alteration, renovation, or demolition work on the grounds that these laws and regulations, *inter alia*, violate substantive due process, procedural due process and constitute a taking without just compensation under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert several pendent state law claims. Defendants have moved to dismiss the federal claims in the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. and to dismiss the pendent state claims for lack of subject matter jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. For the reasons that follow, the motion is granted and the complaint is dismissed.

## BACKGROUND

Plaintiffs are the holders of fee or leasehold interests in three Manhattan office

buildings built between 1968 and 1971.[1] Defendants include the City of New York (the "City"), the Environmental Control Board of the City of New York, Mayor Edward I. Koch, and the Commissioners of the Department of Environmental Protection ("DEP") and the Department of Buildings ("DOB").

The City requires new office buildings to contain fireproofing material. Prior to 1971, asbestos-containing material, along with cementitious material, were the two types of material approved by the New York City Board of Standards and Appeals ("BSA") for fireproofing in steel deck structural steel office buildings, the type of buildings involved in this case. Plaintiffs used asbestos-containing material in the construction of their buildings in order to comply with the fireproofing requirements. In 1971, in response to the public health hazards associated with airborne asbestos, the City banned the use of sprayed asbestos in building construction, effective February 1972. Administrative Code of the City of New York ("Administrative Code") § 24–146(b).

In December 1985, the Council of the City of New York enacted Local Law No. 76 of 1985 ("Local Law 76").[2] This law amended the City Air Pollution Control Code to address the public health hazards posed by airborne asbestos. The Declaration of Legislative Findings and Intent to Local Law 76 states:

"[t]he council hereby finds that exposure to airborne asbestos fibers and particles in the air has been linked by reputable medical and scientific authorities to a significant increase in the incidence of diseases such as asbestosis, bronchogenic carcinoma, mesothelioma, and other malignancies and that substantial amounts of materials containing asbestos have been used in buildings for fireproofing, insulation, soundproofing, decorative and other purposes. The council further finds that the predominant cause of asbestos becoming airborne is due to the performance of building renovation and demolition without adequate adherance [sic] to procedures for safeguarding workers and the general public. . . ." Local Law 76, § 1. Accordingly, Local Law 76 was designed to provide a regulatory framework that would ensure building alteration or demolition work would not cause asbestos to become airborne and thereby threaten the public health.

Local Law 76 requires the presence and condition of asbestos be ascertained before any building alteration, renovation or demolition work is performed. If asbestos is found, it must either be sealed in place or removed if the work would disturb it and cause it to become airborne. The law also requires that all asbestos abatement activities be conducted in accordance with approved safety procedures and be performed by persons with appropriate training and certification. The law does not require the sealing or removal of any asbestos which is not being disturbed or will not be disturbed by the alteration or demolition work.

Pursuant to Local Law 76, before the DOB will approve any plans for building alteration, renovation or demolition work, the applicant must file either a certification prepared by an "asbestos investigator" that the work to be performed will not constitute an "asbestos project", or submit an "asbestos inspection report" which sets forth the condition of the building in relation to the presence and condition of asbestos. Administrative Code § 27–198.1(a).[3]

---

1. These office buildings are located at 77 Water Street, 437 Madison Avenue, and 127 John Street.

2. Local Law 76 was amended in December 1986 by Local Law No. 80 of 1986. The main provisions of Local Law 76 as amended have been codified in the Administrative Code §§ 24–146.1 and 27–198.1.

3. The DOB is empowered to examine and approve plans for the construction and alteration of buildings and to require such work be performed in accordance with other City laws and regulations. Charter of the City of New York ("City Charter") § 645(b)(1)–(2). An owner of a building is responsible for maintaining the building in a safe condition and his or her authorization is required for DOB approval of any building alteration of demolition work. Administrative Code §§ 27–128, 27–140, 27–142, 27–151. In addition, in order to receive DOB approval for alteration or demolition work, the

An asbestos investigator must be certified by the DEP as having "satisfactorily demonstrated his or her ability to identify the presence and evaluate the condition of asbestos in a building and structure." Administrative Code § 24-146.1(a)(3). An "asbestos project" is defined as any work in connection with the alteration, renovation, modification or demolition of a building which will disturb more than two hundred sixty (260) linear feet or one hundred sixty (160) square feet of friable asbestos containing material, or lesser amounts which the DEP may establish by regulation. Administrative Code § 24-146.1(a)(8). The law defines "asbestos-containing material" as asbestos or any material containing more than one percent (1%) asbestos by weight, and such material is defined as "friable" if it can be "crumbled, pulverized or reduced to powder when dry, by hand pressure". Administrative Code § 24-146.1(a)(4), (9).

Certification that the building work does not constitute an asbestos project removes the work from the requirements of Local Law 76. The asbestos inspection reports do not remove the planned work from the regulatory scheme and need not be prepared by an asbestos investigator.

The task of regulating asbestos abatement activities was delegated by Local Law 76 to the DEP with directions to promulgate regulations regarding the health and safety of the public and persons who work at or in the vicinity of an asbestos project. Administrative Code § 24-146.1(c). In March 1987, the DEP adopted regulations implementing the requirements of Local Law 76 concerning asbestos removal or encapsulation. These regulations were subsequently amended in May and August 1987 and January and May 1988. DEP Regulations §§ 8000 et seq. In December 1986, the DEP adopted regulations governing the training and certification of asbestos investigators, asbestos handlers, and asbestos handler supervisors. These regulations were subsequently amended in January, June and August 1987 and May 1988. DEP Regulations §§ 8110-8146.

The DEP regulations regarding asbestos investigators provide that an applicant must be either a professional engineer, registered architect, certified industrial hygienist or safety professional, graduate with a bachelor's degree in engineering, architecture, environmental health science or a related field or an individual with extensive experience in asbestos investigation. DEP Regulations § 8140. In addition, the applicant must successfully complete a minimum course of instruction on various aspects of asbestos. DEP Regulations §§ 8140, 8115.

Local Law 76 provides that owners, lessees and occupants of premises are responsible for the lawful conduct of any work subject to the law. Civil penalties exist for the violation of the provisions of Local Law 76, or any order, rule or regulation promulgated thereunder and certain fees are established for the approval of asbestos related projects. Administrative Code § 24-178(b)(5)(i). The parties do not contest that compliance with these procedures in removing asbestos can be costly.[4]

In May 1988, Local Law No. 46 of 1988 ("Local Law 46") amended the Administrative Code to allow for individual variances from the requirements of the Local Law 76 and the regulations for specific asbestos projects. Variances may be granted if adequate proof is presented that compliance with particular requirements related to asbestos removal or encapsulation would impose unreasonable hardship. In granting a

plans for such work must be prepared by, or under the supervision of, a qualified professional. Administrative Code § 27-140.

**4.** Plaintiffs allege they have already spent $5,592,083 at 77 Water Street, $2,176,746 at 437 Madison Avenue and $722,707 at 127 John Street to remove asbestos containing material in compliance with Local Law 76. Complaint, filed July 22, 1988, at ¶¶ 35-37. Plaintiffs also allege that future compliance will cost approximately $2,954,318 at 77 Water Street, $18,864,238 at 437 Madison Avenue, and $10,536,140 at 127 John Street. Id. In addition, plaintiffs claim they will suffer a significant loss of rental income from each building due to compliance with the law. Id. Finally, plaintiffs assert that Local Law 76 has increased the cost of securing mortgages for their properties. Id. at ¶ 38.

variance, such conditions as the policies of the Administrative Code require may be imposed. Local Law 46 at § 7.[5]

Local Law 76 and the regulations have previously been challenged in federal court by asbestos abatement contractors on the ground that they were preempted by the regulations of the Occupational Safety and Health Administration. The district court's dismissal of that action was affirmed in part and reversed in part by the Second Circuit in *Environmental Encapsulating Corp., v. City of New York*, 855 F.2d 48 (2d Cir.1988). The Second Circuit held that a valid public health purpose, as opposed to occupational health and safety, protected a majority of the City's asbestos laws from a preemption challenge. *Id.* at 57. However, two worker safety regulations regarding medical surveillance of asbestos abatement workers and worker respiratory protection, were found to be preempted by federal law. *Id.*

## DISCUSSION

The Court's role on a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted is a limited one: it must accept plaintiffs' well pleaded allegations at face value and construe the allegations in the complaint in plaintiffs' favor. *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985). The Court may dismiss the complaint only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### A. *Substantive Due Process:*

■ Economic and social welfare legislation is consistent with the requirements of due process if it is rationally related to a legitimate governmental objective. *E.g., Village of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974) (zoning ordinance restricting land use to one family dwellings upheld against constitutional challenge).

> It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.... [It is] clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892–93, 49 L.Ed.2d 752 (1976). A statute that does not burden a suspect class or a fundamental interest will not be overturned unless the varying treatment of different groups or persons is so unrelated to the achievement of any legitimate purpose that the Court can only conclude that the legislature's action was irrational. *E.g., Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988) (rent control ordinance authorizing hearing examiner to consider hardship to tenants in determining the extent of a rental increase for landlords did not violate due process or equal protection).[6]

Plaintiffs do not contest the legitimacy of the stated purpose of Local Law 76 "to safeguard the public health by requiring that renovation or demolition projects which disturb asbestos be conducted in accordance with procedures established pursuant to the provisions of this local

---

**5.** Section 7 of Local Law 46 provides:

[t]he commissioner [of the DEP] may grant individual variances for asbestos projects at specific sites, from particular requirements related to asbestos prescribed by this code and regulations or orders of the commissioner promulgated thereunder, whenever it is found, upon presentation of adequate proof, that compliance with such requirements would impose unreasonable hardship. In granting a variance the commissioner may impose such conditions as the policies of this code may require and shall publish in the City Record no later than seven days after granting of such variance a statement of the reasons leading to his or her decision.

Administrative Code § 24–146.1(i). The procedure to be followed by an applicant seeking a variance is set forth in DEP Regulations § 8102.

**6.** Neither fundamental rights nor suspect classifications are involved in the present action.

law...." Local Law 76 at § 1. This Court also concurs with the Second Circuit's explicit recognition that Local Law 76 and the regulations "have a legitimate and substantial purpose to promote public safety and health." *Environmental Encapsulating Corp., v. City of New York, supra,* 855 F.2d at 55.

Instead, plaintiffs challenge the manner in which the City has sought to achieve this legitimate purpose of protecting the public health. They argue it is irrational to make building owners pay the cost for asbestos safety when the City approved the installation of such asbestos in the first instance. The crux of plaintiffs' argument is estoppel: the City required fireproofing and approved the use of asbestos-containing materials as one of two available fireproofing methods; plaintiffs chose to install asbestos solely because of the City's fireproofing requirements; therefore the City is estopped from requiring plaintiffs to pay the costs of ensuring the safety of the public from asbestos when alteration, renovation, or demolition work is performed on the buildings.

It is clear however, that an owner of a lawfully constructed building can be compelled in the name of public safety to make improvements to the property, even when those improvements require great expense. *E.g., Queenside Hills Realty Co. v. Saxl,* 328 U.S. 80, 82–83, 66 S.Ct. 850, 851, 90 L.Ed. 1096 (1946). (New York law requiring installation of sprinklers can be applied to buildings constructed in conformity with preexisting laws). Construction of a building in full compliance with existing laws does not provide an owner with immunity against the subsequent legitimate exercise of police power by the State. *Id.*

Little need be said on the due process question. We are not concerned with the wisdom of the legislation or the need for it. Protection of the safety of persons is one of the traditional uses of the police power of the States.... Many types of social legislation diminish the value of the property which is regulated. The extreme cases are those where in the interest of the public safety or welfare the owner is prohibited from using his property. We are dealing here with a less drastic measure. But in no case does the owner of property acquire immunity against the exercise of the police power because he constructed it in full compliance with the existing laws. The police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights.

*Id.* (citations omitted).

Plaintiffs argue this is a case of first impression because the City's express approval of the installation of asbestos-containing material is fundamentally different than the passage of laws and regulations which are later superceded by more exacting requirements. While plaintiffs' position is sympathetic, there is no reasoned distinction between this case and other cases which upheld the legislature's ability to require building owners to comply with new safety requirements which differed from preexisting ones. *See Queenside Hills Realty Co. v. Saxl, supra,* 328 U.S. at 82–83, 66 S.Ct. at 851; *McCallin v. Walsh,* 64 A.D.2d 46, 407 N.Y.S.2d 852 (1st Dept.), *aff'd,* 46 N.Y.2d 808, 413 N.Y.S.2d 922, 386 N.E.2d 833 (1978) (due process challenge rejected to a City law which required the installation of costly elevator alarm and sprinkler/smoke control systems and the adoption of a fire safety plan in certain office buildings); *Oriental Boulevard Co. v. Heller,* 27 N.Y.2d 212, 221, 316 N.Y.S.2d 226, 231, 265 N.E.2d 72, 77 (1970) *app. dism'd,* 401 U.S. 986, 91 S.Ct. 1234, 28 L.Ed.2d 527 (1971) (law requiring installation of air pollution control equipment held constitutional). In each of these cases, new laws were enacted that forced a building owner to make costly expenditures to his or her property in the interest of public health and safety, even though the building had been in compliance with the prior legal requirements.[7]

---

7. Similarly, the fact that plaintiffs may not have been at fault for the existence of the dangerous condition does not exempt them from the exercise of the City's constitutional power to protect the public from the condition. *See generally,* Section 107 of the Comprehensive Environmen-

In *McCallin,* the court rejected the argument that the City could not constitutionally pass legislation which would require builders to take out previously lawful elevator equipment and replace it with other equipment designed to further protect public safety, despite the fact that this meant the costly removal of the prior lawful equipment. *McCallin v. Walsh, supra,* 64 A.D.2d 46, 60–64, 407 N.Y.S.2d 852, 859–63. Plaintiffs suggest that advances in safety technology justified the new safety laws in *McCallin* and such advances are not present in this case. This argument is misguided. The advances in science that unveiled the safety risks presented by asbestos are indistinguishable from the developments plaintiffs concede would justify new regulations imposing costly burdens on property owners. The adoption of public health and safety regulations does not constitutionally constrict the City's future ability to exercise its police powers in order to protect the public. When the public welfare is found to be in need of additional protection over and above the current regulatory scheme enacted by the City, there is no due process impediment to the City's power to rationally modify, rescind, or overrule its prior regulations.

### 1. Retroactivity

Local Law 76 and the regulations apply only when owners chose to perform alteration, renovation, or demolition work on their buildings in the future. Nevertheless, plaintiffs argue the law has a retroactive effect because all office buildings in New York of necessity require such work in order to remain economically viable as office buildings readily adaptable to new tenants. Therefore, they claim Local Law 76 forces them to retroactively undo their

compliance with the fireproofing regulations.

Retroactive legislation is generally constitutional, even if it upsets settled expectations or imposes a new liability based on a past act. *Canisius College v. United States,* 799 F.2d 18, 25 (2d Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). Due process, however, "generally does not permit retrospective application of statutes that cause especially 'harsh and oppressive' consequences." *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 972 (2d Cir.1985). The proper test for determining the constitutionality of an economic or social law which has a retroactive effect is the same as that for a law with only a prospective effect: whether there exists a legitimate legislative purpose for the law which will be accomplished by a rational means. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). For retroactive laws, the retroactive application itself must be justified by a rational legislative purpose. *Id.* at 730, 104 S.Ct. at 2718.

Plaintiffs argue the Court should apply the structured, four-part substantive due-process test enunciated in *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 592 F.2d 947 (7th Cir.1979), *aff'd on other grounds,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), and endorsed in this District by *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 549 F.Supp. 404, 406 (S.D.N.Y.1982), *aff'd,* 725 F.2d 843 (2nd Cir.1984).[8] The four factors set forth in *Nachman* to decide if legislation represents a rational means to a legitimate end are: (1) the reliance interests of the parties affected; (2) whether the impairment of the private interest is effected

tal Response Compensation and Liability Act of 1980, 42 U.S.C. § 9607 (strict liability imposed on property owners for the costs of remedial action to clean up hazardous waste on their property).

**8.** Plaintiffs do not point out that the Second Circuit in *Textile Workers* expressly declined to decide if such a test was appropriate to apply to retroactive legislation. *Textile Workers Pension Fund v. Standard Dye and Finishing Co., Inc.,* 725 F.2d 843, 850 (2d Cir.), *cert. denied,* 467 U.S.

1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984). Furthermore, the Supreme Court, in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co., supra,* 467 U.S. at 727 n. 6, 104 S.Ct. at 2716 n. 6, rejected the application of the *Nachman* test in the context for which it was devised, federal legislation affecting economic benefits and burdens. The Supreme Court, however, did leave open the possibility that these four factors might be relevant in some circumstances. *Id.*

in an area previously subjected to regulatory control; (3) the equities of imposing the legislative burdens; and (4) the inclusion of statutory provisions designed to limit and moderate the impact of the burdens. *Nachman Corp. v. Pension Benefit Guaranty Corp., supra,* 592 F.2d at 960.

Assuming for the purposes of this motion that Local Law 76 has a retroactive effect and that the criteria enunciated in *Nachman* are relevant, Local Law 76 still clearly meets the requirements of due process. Plaintiffs' only applicable contention relates to the first prong of the *Nachman* test: reliance on the City's approval of asbestos-containing material as a fireproofing method. Reliance on prior law alone is clearly not enough to state a due process claim. *See Queenside Hills Realty Co. v. Saxl, supra,* 328 U.S. at 82–83, 66 S.Ct. at 851. Further, it was evident that the area of building alterations was one subject to intensive regulation, including regulations protecting the public welfare. Plaintiffs could not reasonably have expected to acquire immunity from the future exercise of the City's police powers by compliance with the existing safety provisions. To the contrary, building owners could very well expect to be subject to future public health regulations when conditions were uncovered in their buildings which posed a threat to public health or safety, regardless of the source of the condition. The third and fourth factors of *Nachman* also favor upholding the asbestos law. Importantly, plaintiffs receive the economic benefits from the alteration, renovation, or demolition work they wish to do on their buildings and the law only applies when plaintiffs voluntarily seek to undertake such work. While plaintiffs may be required to bear the cost to protect the public from airborne asbestos in their buildings, they are granted the reciprocal privilege of profiting from the public through the use of these buildings. In addition, the Supreme Court has explained that:

> [u]nder our system of government, one of the State's primary ways of preserving the public weal is restricting the uses individuals can make of their property. While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions that are placed on others.... These restrictions are "properly treated as part of the burden of common citizenship." *Kimball Laundry Co. v. United States,* 338 U.S. 1, 5 [69 S.Ct. 1434, 1437, 93 L.Ed. 1765] (1949). Long ago it was recognized that "all property in this country is held under an implied obligation that the owner's use of it shall not be injurious to the community,...."

*Keystone Bituminous Coal Ass'n v. De Benedictis,* 480 U.S. 470, 491–92, 107 S.Ct. 1232, 1245, 94 L.Ed.2d 472 (1987) (citations omitted).

Finally, the variance provision allows for mitigating circumstances to be considered when compliance with the law is argued to be infeasible in the individual case. Accordingly, Local Law 76 satisfies the requirements of due process even under the *Nachman* test plaintiffs urge the Court to apply.

Moreover, restricting the ability of a property owner to use his or her property in the specific manner which is most likely to expose the public to the dangers associated with airborne asbestos is clearly a limited, rational approach to effectuate the valid purpose of protecting the public health; plaintiffs have not stated a substantive due process claim.

**B.  *Procedural Due Process***

Plaintiffs argue that the private asbestos investigators are improperly given unbridled reign to determine the application of Local Law 76. The gravamen of this argument is that the absence of a formal procedure for an appeal from an asbestos investigator's refusal to certify the absence of asbestos is a denial of property without due process of law.

There is clearly no merit to plaintiffs' procedural due process claim. The determination that friable asbestos be removed or encapsulated has been made by the legislature. The determination as to how asbestos abatement work is to be performed is made by the DEP pursuant to Local Law

76. The decision not to approve permits for building alteration or demolition work is made by the DOB. The protection offered by the legislative process satisfies the requirements of procedural due process when the legislature enacts a law, or an agency promulgates a rule, affecting a general class. *See, e.g.,* J. Nowak, R. Rotunda, J. Young, *Constitutional Law,* 2d ed., 1983 at 556.

Asbestos investigators fulfill a role analogous to the qualified professionals, usually registered architects or professional engineers, who are required to prepare or supervise the preparation of all building plans authorized by the owner. *See* Administrative Code §§ 27–140, 27–142, and 27–151. The DOB is empowered to examine and approve such plans. City Charter § 645(b)(1). Any owner who retains a licensed or certified professional and is not satisfied with the licensee's work, has three remedies: (1) he or she can simply obtain the services of another professional; or, in the case of incompetent or dishonest work, (2) he or she can report the professional to the licensing or certifying body; or (3) he or she can take the matter to court by suing the professional for negligence or malpractice.[9] Even if the asbestos investigators are construed as performing a governmental function, plaintiffs have recourse to a forum affording them full due process rights regarding the investigators' determination, including the right to a hearing and an impartial decision maker. An adequate state court remedy satisfies the requirements of due process. *Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 102–03 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). More importantly, it is the legislature, the DEP and ultimately the DOB who act as the relevant decision makers in the process. Plaintiffs do not challenge any of these decisions as a constitutional violation of procedural due process.[10]

Furthermore, the variance provision provides plaintiffs an opportunity to be individually heard by the DEP regarding the specific asbestos project in question. Plaintiffs, apparently unaware of the amendment adding the variance provision, argue that the absence of a variance makes the Local Law fatally deficient, and distinguishes it from the similar law upheld in *McCallin.* Obviously, the existence of such a variance moots this aspect of plaintiffs' argument.

## C. *Taking of Property Without Just Compensation*

■ The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides, in relevant part, that "private property [shall not] be taken for public use, without just compensation." This guarantee "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). However, the Supreme Court has often "upheld substantial regulation of an owner's use of his own property [against taking claims] where deemed necessary to promote the public interest." *E.g. Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982). In fact, regulation restricting the use of property is a primary means available to a State to protect the public welfare. *Keystone Bituminous Coal Ass'n v. De Benedictis, supra,* 480 U.S. 470, 489–91, 107 S.Ct. 1232, 1244–45, 94 L.Ed.2d 472 (1987) (prohibition on the mining of coal from certain areas to prevent subsidence

---

**9.** Plaintiffs' allegation that asbestos investigators may be unwilling to certify that asbestos is not present in a building because of the fear of civil liability from an incorrect certification is purely speculative and insufficient to support a procedural due process claim.

**10.** Defendants argue that plaintiffs have no standing to assert a procedural due process argument based on a hypothetical failure of an asbestos investigator to certify that work will not disturb asbestos because they have admitted that their buildings contain asbestos and are subject to Local Law 76. Regardless of their standing to maintain such a claim, the Court concludes that the claim itself is insufficient to provide plaintiffs with relief.

damage did not constitute a taking of mine owners' property).

No set formula exists to determine whether compensation is constitutionally due for a governmental restriction on property. *Loretto v. Teleprompter Manhattan CATV Corp., supra,* 458 U.S. at 426, 102 S.Ct. at 3171. The analysis of whether a taking has occurred is generally "*ad hoc,* [and] factual." *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Several factors should be considered in a takings analysis, including the character of the governmental action and the economic impact of the regulation on the claimant, especially the extent to which the regulation has interfered with distinct investment-backed expectations. *Id.*

On the one hand, when the character of the restriction reaches the "extreme form of a permanent physical occupation, a taking has occurred." *Loretto v. Teleprompter Manhattan CATV Corp., supra,* 458 U.S. at 426, 102 S.Ct. at 3171 (New York statute providing that a landlord must permit a cable television company to install its cable facilities upon his or her property found to be a taking). On the other hand, a statute regulating the uses that can be made of property results in a taking if it "does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land." *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Keystone Bituminous Coal Ass'n v. De Benedictis, supra,* 480 U.S. at 485, 107 S.Ct. at 1242; *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 125, 106 S.Ct. 455, 458, 88 L.Ed.2d 419 (1985).

Plaintiffs argue Local Law 76 constitutes governmental action akin to a physical taking because plaintiffs are required to remove materials originally installed at the City's direction through a process of sealing off and closing portions of their buildings. Defendants respond that plaintiffs assert at most a regulatory takings claim

and, because they do not allege the extinguishment of all economically viable use of their property, the takings claim is not viable.

The character of Local Law 76 is clearly that of a regulation on the use of property. The law only applies when the owner of property seeks to use it in a manner which threatens to make asbestos become airborne. The fact that a use regulation may have some impact on the physical characteristics of the land is unexceptional. *See Keystone Bituminous Coal Ass'n v. De Benedictis, supra,* 480 U.S. at 488–89, n. 18, 107 S.Ct. at 1244, n. 18. Plaintiffs argue that an expansive definition of what constitutes a physical appropriation of property is called for because of the City's prior fireproofing requirements. Plaintiffs, however, have presented no legal support for such a claim. In fact, applying a broad brush in construing whether a regulation works a physical appropriation of property flies in the face of the Supreme Court's express warnings against overly constricting a State's ability to regulate the use of property to protect the public welfare. *Loretto v. Teleprompter Manhattan CATV Corp., supra,* 458 U.S. at 441, 102 S.Ct. at 3179.

In holding that a taking had occurred in *Loretto,* the Supreme Court specifically underscored the narrowness of its ruling, basing its determination on the fact that the statute in question resulted in an actual physical appropriation of part of the landlords' property. *Loretto v. Teleprompter Manhattan CATV Corp., supra,* 458 U.S. at 441, 102 S.Ct. at 3179. The Supreme Court in *FCC v. Florida Power Corp.,* 480 U.S. 245, 251, 107 S.Ct. 1107, 1111–12, 94 L.Ed.2d 282 (1987), reemphasized the narrow scope of *Loretto,* finding it inapplicable to regulations which decreased the rent cable television companies had to pay utility companies for the use of utility poles because the utility companies had previously agreed to allow access to the poles.[11] Even if Local Law 76 is analyzed under the

---

11. The Supreme Court expressly declined to reach the question of whether *Loretto* would apply were the utility companies required to offer access to the cable television providers. *FCC v. Florida Power Corp., supra,* 480 U.S. at 251–52, n. 6, 107 S.Ct. at 1112, n. 6.

framework set forth in *Loretto* and *Florida Power* for the physical appropriation of property, the law does not constitute a taking of plaintiffs' property because it requires asbestos be removed only if the building owner voluntarily chooses to undertake alteration work which will cause asbestos to become airborne.

Furthermore, the Court in *Loretto* took steps to explain that the invalid law removed the rights of ownership from the landlords by directing that a third party be allowed to install the cable television equipment. If the landlords were simply required to install the equipment themselves a different question might have been presented, because they would have continued to enjoy the rights of ownership, including the ability to control compliance with the statute. *Loretto v. Teleprompter Manhattan CATV Corp., supra,* 458 U.S. at 440–41, n. 19, 102 S.Ct. at 3179, n. 19.[12] Local Law 76 and the regulations clearly allow plaintiffs to maintain all their rights of control over the manner in which compliance with the law is achieved.

Despite plaintiffs diligent attempts to characterize Local Law 76 as a physical invasion of their property, the law simply regulates the uses that they can make of the buildings, and does so in a rather narrow manner. The ability to renovate the buildings is conditioned on the protection of the public from the dangers associated with airborne asbestos. Plaintiffs are free to use the buildings without making alterations or to make alterations that do not present a public health hazard by causing asbestos to become airborne. If plaintiffs choose either of these alternatives, the strictures of Local Law 76 can be completely avoided. The extent of any alteration work to be performed, and therefore the extent of the cost of compliance with the law for any asbestos project, is solely left to the discretion of plaintiffs. Furthermore, plaintiffs continue to control the activities that occur in their buildings and remain able to supervise or dismiss the qualified individuals they voluntarily choose to retain to perform the asbestos removal work. It is plaintiffs who remain ultimately responsible for compliance with the requirements of Local Law 76. Their ownership rights in the property are not significantly diminished by the requirements of asbestos removal.

Plaintiffs next contend that Local Law 76 and the regulations constitute a taking because they eliminate the intended use of the property as office buildings readily adaptable to tenants with diverse office space needs. Plaintiffs creative definition of the intended use of their property, while resulting in a conflict with the requirements of Local Law 76, does not state a takings claim. Legislation enacted pursuant to the police power will not be a taking because it denies an owner the most profitable, or preferred, use of the property. *Keystone Bituminous Coal Ass'n v. De Benedictis, supra,* 480 U.S. at 489 n. 18, 107 S.Ct. at 1244 n. 18; *Penn Central Transportation Co. v. City of New York, supra,* 438 U.S. at 124, 133, 98 S.Ct. at 2659, 2663; *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 592, 82 S.Ct. 987, 988, 8 L.Ed.2d 130 (1962) (ordinance prohibiting certain excavation did not constitute taking even though it prohibited prior use of land by plaintiff); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Moreover, regulations which have caused substantial reductions in property value have not been found to constitute a taking. *Sadowsky v. City of New York,* 732 F.2d 312, 317–18 (2nd Cir.1984); *Pompa Construction Corp. v. City of Saratoga*

---

12. In *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 392–93, 62 L.Ed.2d 332 (1979) the Supreme Court found a taking had occurred from the imposition of a navigational servitude by the government on plaintiff's private marina, subjecting it to access by the public. The navigational servitude imposed by the government in *Kaiser Aetna* stripped plaintiffs of their ability to exclude the public from their property, a fundamental element of their rights as owners, and as such was an actual physical invasion which constituted an appropriation of plaintiffs' property. *Id.* Local Law 76 and the regulations do not present an analogous factual situation as an owner's dominion and control over his or her property, including the right to exclude others, remains unaffected by the City's requirements.

*Springs,* 706 F.2d 418, 425 (2d Cir.1983). *See also Hadacheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915) (ordinance prohibiting use of property as brick yard not a taking even when the result is a decrease in property value from $800,000 to $60,000). When the health, safety, or general welfare of the public would be protected by prohibiting a particular contemplated use of land, the Supreme Court has consistently upheld land use regulation that destroyed or adversely affected recognized real property interests. *Penn Central Transportation Co. v. City of New York, supra,* 438 U.S. at 125, 98 S.Ct. at 2659.

Contrary to plaintiffs' suggestion, compliance with the City's prior fireproofing requirements does not remove this case from the established case law regarding the government's ability to restrict the use of property for the public benefit. As the Supreme Court has noted:

> "taking" challenges have ... been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm."

*Penn Central Transportation Co. v. City of New York, supra,* 438 U.S. at 125, 98 S.Ct. at 2660. Indeed, valid zoning laws which prohibit an entire use of property result in more severe hardship on property owners than Local Law 76, which only adds to the cost of a specific use of property dangerous to the public, and leaves the final choice on how to use the property in the hands of the owner.

Plaintiffs have failed to allege a sufficient diminution in value or use of their buildings caused by Local Law 76 to state a claim. While they contend that compliance with the law will result in substantial cost, they make no allegation that the buildings will be robbed of all economic use. Com-

plaint at ¶ ¶ 34–38. Plaintiffs have not alleged that the law will force them to give up the general use of their property as office buildings, nor have they even alleged that the operation of their buildings will be unprofitable. *See Keystone Bituminous Coal Ass'n v. De Benedictis, supra,* 480 U.S. at 495–96, 107 S.Ct. at 1247–48. ("petitioners have not claimed ... the Act makes it commercially impracticable for them to continue mining.... Indeed, petitioners have not even pointed to a single mine that can no longer be mined for profit").

Plaintiffs are not required to seal off the entire building while asbestos is removed under the regulations, only those sections which will be affected by the alteration work. Those parts of the building not being renovated are fully available for plaintiffs' use and economic benefit. Apparently, the buildings continue to be used by plaintiffs as office buildings, a reflection of plaintiff's own determination that the benefits of continued operation outweigh the costs of compliance with Local Law 76.

Local Law 76 and the regulations impose additional costs on plaintiffs as incident to their ownership of property, but these costs are well within the scope of the City's police powers. Accordingly, plaintiffs have failed to state a constitutional takings claim.[13]

#### D. *State Law Claims*

█ The second through eighth claims for relief in the Complaint assert a series of pendent state causes of action which attack the validity of Local Law 76 and the DEP regulations. Briefly, these claims allege that:

(a) Local Law 76 delegates legislative and governmental authority to the DEP in violation of the state constitution;

(b) Local Law 76 delegates sovereign authority to a private person in violation of the state constitution;

---

**13.** Plaintiffs argue that the motion to dismiss should be denied in order to afford them the opportunity to conduct discovery concerning when the City knew of the dangers of airborne asbestos and why a prior City draft of Local Law 76, with more onerous requirements on property owners, was not adopted by the City. Neither of these subject areas will yield information relevant to the determination of the constitutional claims and therefore the discovery request is insufficient to defeat the motion to dismiss.

**96**

(c) the DEP regulations are inconsistent with Local Law 76;

(d) the DEP regulations are inconsistent with the Air Pollution Control Code, of which Local Law 76 is a part;

(e) Local Law 76 and the regulations violate the Environmental Conservation Law;

(f) Defendants are estopped from enforcing Local Law 76;

(g) Defendants have been unjustly enriched.

Dismissal of the federal claims upon which plaintiffs base jurisdiction in federal court at this preliminary stage in the case calls for the discretionary dismissal of the pendent state claims as well. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). No prejudice will accrue to plaintiffs by such a dismissal as New York Civil Practice Law and Rules § 205(a) allows plaintiffs to recommence any action in state court within six months after it is dismissed by a federal court on jurisdictional grounds, if it was timely commenced in the first instance. *See Dunton v. County of Suffolk,* 729 F.2d 903, 911 n. 8 (2d Cir.), *amended on other grounds,* 748 F.2d 69 (1984). Therefore, the pendent state claims should be dismissed pursuant to Rule 12(b)(1), Fed.R.Civ.P. for lack of subject matter jurisdiction.

### CONCLUSION

Local Law 76 and the regulations do not violate substantive due process, procedural due process, nor do they constitute a taking without just compensation under the Fifth and Fourteenth Amendments to the Constitution. Accordingly, defendants' motion to dismiss the federal constitutional claims is granted. The pendent state law claims are also dismissed for lack of subject matter jurisdiction.

It is so ordered.