RAYMOND J. WOLF, Respondent-Appellant, v 2539 REALTY ASSOCIATES et al., Appellants-Respondents.

First Department, September 6, 1990

APPEARANCES OF COUNSEL

*Thomas C. Murray, Jr.,* of counsel *(Berman & Murray,* attorneys), for respondent-appellant.

*Leon D. Lazer* for appellants-respondents.

**OPINION OF THE COURT**

RUBIN, J.

At issue on this appeal is who, as between the landlord and the tenant, should bear the cost of alteration to a building component which remains functional but which nevertheless requires extensive modification as a result of governmental action.

Plaintiff is the lessee of space on the first four floors and a

portion of the basement of the subject premises which he utilizes as a parking garage. Defendants are the owner, general partner and managing agent (collectively The Landlord) of the building. At the time of its construction in 1963, the structural steel members were coated with an asbestos-containing substance which was then approved as a fireproofing material for the protection of steel-frame structures *(Kaufman v City of New York,* 717 F Supp 84, 86, *affd* 891 F2d 446, *cert denied* — US —, 109 L Ed 2d 744 [1990]). In a letter dated September 4, 1986, after the lease had been in effect for some 23 years with some 8 years remaining in the term, plaintiff's counsel informed The Landlord, "From what we have been led to believe, there is a possibility that the asbestos could be deemed a dangerous toxic condition and that under the rules and regulations of OSHA [Occupational Safety and Health Administration], the situation should be corrected immediately." The Landlord's response was to issue a demand pursuant to article 10 of the lease which "provides that the tenant shall comply with all requirements of all laws, orders, etc. which shall impose any duty upon the landlord or the tenant with respect to tenant's use and occupation of the demised premises" and to direct the tenant to "immediately, at your expense, correct any and all defective conditions within the interior of the demised premises." The communication was followed by a 30-day notice to remedy the condition pursuant to article 26 of the lease. Plaintiff then initiated the instant action seeking a judgment declaring that it is The Landlord's responsibility to remedy the asbestos condition. Plaintiff also obtained a *"Yellowstone" (First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630) injunction staying The Landlord from taking any action to terminate his tenancy. The matter is before this court on defendants' appeal and plaintiff's cross appeal from a judgment declaring that the burden of abating the hazardous condition caused by the presence of friable asbestos-containing material at the premises rests upon The Landlord.

From the record, it is not apparent which regulation is claimed to be violated or by what authority abatement of the asbestos condition is required. However, section 24-146.1 (g) of the Administrative Code of the City of New York empowers the Commissioner of Environmental Protection with the authority to promulgate regulations for the protection of the health and safety of workers and the public from injury from asbestos which has been or is likely to be disturbed, whether

or not demolition or alteration of the building is being performed. Subdivision (h) thereof provides the authority to order the premises to be vacated and any work necessary to remove the danger to be performed. The record contains a reference, albeit in the affidavit of plaintiff's counsel, to a notice issued by the New York City Health Department that the parking garage would be closed down unless the condition were remedied. While the exact circumstances by which this controversy arose are not known, it is undisputed by the parties that a hazardous asbestos condition exists in the subject premises which requires removal or encapsulation of the asbestos-containing material covering the steel structural members. The only issue, therefore, which is required to be decided upon this appeal is whether, as a matter of law, either pursuant to the lease or not withstanding its terms, the tenant or The Landlord must bear the cost of the work.

Analysis appropriately begins with the maintenance provisions of the Building Code (Administrative Code, tit 27, ch 1, subch 1, art 6) § 27-128: "Owner Responsibility. The owner shall be responsible at all times for the safe maintenance of the building and its facilities." This provision is entirely self-explanatory. The lease, however, contains two provisions which, it is urged, shift the responsibility for the abatement of the asbestos condition onto the tenant. Section 4, which deals with repairs, provides: "The Tenant shall take good care of the demised premises and of the fixtures therein, and shall keep the interior of the demised premises in good order and repair and, notwithstanding anything herein contained which may be interpreted to the contrary, the Landlord agrees to make all exterior repairs * * *. The Landlord further agrees to make any exterior structural repairs or alterations (except as herein set forth) provided that such repairs or alterations are not made necessary by any acts of conduct of the tenant, its agents, servants, customers and/or employees." Pursuant to this provision, The Landlord maintains that its responsibility is limited to exterior structural repairs and that all other repairs, including abatement of the hazardous condition at issue, are the responsibility of the tenant.

Section 10 of the lease, which deals with compliance with governmental regulations, provides: "Tenant shall comply with all requirements of all laws, orders, ordinances and regulations of the federal, state, county and municipal authorities, and with any direction, pursuant to law, of any public officer or officers, which shall impose any duty upon Landlord

or Tenant with respect to Tenant's use and occupancy of the demised premises. Tenant shall not permit to be done any act or thing upon said premises which shall or might subject Landlord to any liability or responsibility for injury to any person or persons or to any injury or damage to any property by reasons of any business or operation being carried on upon said premises; and shall comply with all rules, orders, regulations or requirements of the New York Board of Fire Underwriters, City Department or Municipal Authorities and shall not do, or permit anything to be done, in or upon said premises, or bring or keep anything therein in violation of the terms of this lease." Pursuant to this provision, The Landlord similarly maintains that it is the tenant's responsibility to comply with any regulations and orders regarding the removal or encapsulation of asbestos-containing material (ACM) in the leased premises.

Upon the appeal, the parties' main contention is whether or not the required remedial alterations are structural or extraordinary so as to remove them from the operation of the repair clause (§ 4) of the lease, thereby relieving the tenant of responsibility for their effectuation *(see, Mayfair Mdse. Co. v Wayne,* 415 F2d 23 [2d Cir 1969]). It must be observed, however, that the abatement of the asbestos hazard is not a condition in need of "repair" in the normal sense of the word, meaning "fix" or "mend" (Webster's Third New International Dictionary 1923). Corrective measures are not necessitated by any damage or wear which impairs the effectiveness of the material. Significantly, there is no allegation that the ACM applied to the structural steel has been rendered ineffective for its intended function as a fireproofing agent. Rather, remedial measures are mandated by a supervening change in governmental policy which reflects an awareness that asbestos—at least in a readily friable form—is unsuitable for use in areas of human occupancy. Such mandated alterations do not come within the purview of the repair clause *(Mayfair Mdse. Co. v Wayne, supra).*

The repair clause of a lease is designed to ensure that, in the language of the subject lease, "[t]he Tenant shall take good care of the demised premises and of the fixtures therein, and shall *keep* the interior of the demised premises *in good order and repair"* (emphasis supplied). The clear import of this language is that the tenant shall maintain the function of the fixtures and any interior building components for which he is responsible. Keeping a fixture or component in "good order

and repair" means only that its function must be restored if impaired. It does not entail the assumption of any responsibility for an inherent characteristic of a material employed in the original construction of the premises by the owner or his agents in compliance with then-existing laws and regulations. To put a fine edge on the linguistic distinction being drawn, it may be correctly stated that the asbestos condition in issue is one which is *reparable* (embracing the broader meaning of "to remedy or make right") by the landlord, but it may not be correctly stated that it is a condition which is *repairable* (meaning "to fix or mend") by the tenant *(see,* Garner, A Dictionary of Modern Legal Usage, at 476).

The Landlord's contention that activities of the tenant in carrying on his business may have disturbed the asbestos, causing a hazardous condition, need not detain us. As a result of normal wear and tear, some disturbance of the ACM coating on the steel must be anticipated. The danger which is presented exists as a result of the use of a hazardous material in an application where normal human activity may disturb it and cause it to become airborne, not in the particular human endeavor, if any, which causes its dispersal. Indeed, in opposing the tenant's motion for summary judgment, The Landlord has offered no evidence that any activity could be safely carried on in the demised premises under the present circumstances.

By application of the same reasoning, the governmental compliance clause of the lease is equally ineffective to shift the burden of abating the asbestos condition onto the tenant. By its express language, it imposes the duty to comply with the law, regulation or direction of a public officer "with respect to Tenant's use and occupancy of the demised premises." Such a clause is designed to protect a landlord against the assumption of any additional burden which might be imposed by the necessity to comply with laws and regulations governing the tenant's particular use of the premises. Again, if the premises cannot be safely put to any use without removal or encapsulation of the ACM, the necessity to comply with such a direction cannot be said to arise out of the particular use made of the premises by the tenant, nor to be his responsibility *(Bush Term. Assocs. v Federated Dept. Stores,* 73 AD2d 943, 944; *see also, First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 635-636, *supra; SKD Enters. v L&M Offset,* 65 Misc 2d 612 [Sandler, J.]).

In conclusion, there is no construction of the cited lease

provisions under which the abatement by the tenant of the hazardous condition presented by the presence of friable asbestos in the demised premises can be said to have been within the contemplation of the parties at the time they entered into the lease (Rasch, Landlord and Tenant—Summary Proceedings § 589 [2d ed]). This conclusion is inescapable when the regulations with which compliance is required were enacted subsequent to the date of the lease agreement *(Mayfair Mdse. Co. v Wayne,* 415 F2d 23, *supra).*

Accordingly, the order of the Supreme Court (Shirley Fingerhood, J.), entered May 18, 1989, which granted defendants' motion and plaintiff's cross motion for leave to reargue and, upon reargument, granted plaintiff's motion and denied defendant's cross motion for summary judgment, and declared that defendants bear the burden of abating the hazardous condition at the premises by removing or encapsulating asbestos-containing material, should be affirmed, with costs. The order of the same court entered January 11, 1989 is superseded by the order upon reargument, and the appeals therefrom are dismissed as moot, without costs.

MURPHY, J. P., ROSS, ROSENBERGER and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on May 18, 1989, unanimously affirmed. Plaintiff-respondent-appellant shall recover of defendants-appellants-respondents $250 costs and disbursements of said appeal. The appeals from the order of said court entered on January 11, 1989, are dismissed as moot, without costs and without disbursements, said order having been superseded by the order entered on May 18, 1989.