■ P.A. BUILDING COMPANY, Appellant-Respondent, v CITY OF NEW YORK, Respondent-Appellant. [760 NYS2d 154] —Order, Supreme Court, New York County (Joan Madden, J.), entered December 21, 2001, as resettled by order, same court and Justice, entered May 15, 2002, which denied plaintiff landlord's motion for summary judgment and granted defendant City's cross motion for summary judgment dismissing the complaint and for partial summary judgment on its first counterclaim to the extent of awarding defendant summary judgment on said counterclaim, including the amount of rent overcharges attributable to the landlord's asbestos abatement expenditures for 1988 through 1992, and directing a trial to determine the balance of said claim, including the amount attributable to asbestos abatement expenditures for 1993, and for partial summary judgment on its second counterclaim, unanimously modified, on the law, to the extent of denying defendant's cross motion for summary judgment dismissing the complaint, denying defendant summary judgment with respect to that portion of its first counterclaim for rent overcharges attributable to asbestos abatement costs, denying defendant partial summary judgment on its second counterclaim, for its share of any tax refund, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about June 12, 2002, which denied plaintiff's motion for renewal and granted its motion for reargument but adhered to the original determination, unanimously dismissed as academic in view of the foregoing. Judgment, same court and Justice, entered June 18, 2002, unanimously reversed, on the law, without costs, and the judgment vacated.

Plaintiff landlord and tenant City entered into a series of similar leases between 1978 and 1994. The leases contained rent escalation provisions which required the payment of additional rent on a ratable basis based upon the building's "operating expenses * * * as audited by the [New York City] Comptroller." The leases defined "operating expenses" as costs related to the building's "operation, maintenance and repair" but excluded, inter alia, "the costs of correcting defects in the construction of the Building * * * except * * * conditions resulting from ordinary wear and tear" and the cost of any "alterations, additions, changes, replacements and other items which under generally accepted accounting principles and auditing principles" are considered by the real estate industry to be "capital expenditures," except "such capital expenditures * * * made for replacements of Building equipment and property, the repair cost of which is such as to warrant in Landlord's good judgment the replacement thereof in lieu of repair."

In this action, the landlord sought unpaid rent escalations from 1993 and 1994 and retroactive escalations for 1988-1993 based on certain capital expenditures alleged to be "operating expenses." The City counterclaimed for rent overcharges and its share of a tax refund that the landlord offset against the claimed amount of rent escalation. A previous Supreme Court action by plaintiff, seeking other unpaid rent escalation charges from the City, which counterclaimed for a declaration that it was entitled to an audit and for rent overcharges that it alleged would be demonstrated by the audit, ended in summary judgment dismissing the landlord's complaint and an order directing the landlord to submit to the audit. This Court affirmed (*P.A. Bldg. Co. v City of New York*, 217 AD2d 417 [1995], *lv denied* 86 NY2d 708 [1995]).

The motion court erred in dismissing, in its entirety, plaintiff's claim for payment of rent escalations on the basis of the law of the case doctrine. Specifically, the motion court's error was in relying on the word "cancelled" as used in our affirmance (*id.* at 417), which it deemed law of the case. The word was used in the context of discussing a party's performance of its obligations under a dependent covenant where the other party has failed to perform. The rule is that a party's failure to perform its obligations under a dependent covenant results in the suspension of the complying party's obligation to perform under the agreement until such time as the defaulting party complies. The complying party's obligation is not completely nullified, but only "exculpated presently * * * until such time"

as the noncomplying party complies (*Isbrandtsen Co. v City of New York*, 33 AD2d 1018 [1970]). A closer reading of our decision and *Broad Props. v Wheels Inc.* (43 AD2d 276, 278 [1974], *affd* 35 NY2d 821 [1974]), the authority we cited and which also used the term "cancelled," clearly shows that in each instance it was understood that the complying party's obligation was suspended; indeed, the decision we affirmed used the term "suspended."

As a consequence, the motion court's decision to deny all of plaintiff's rent escalations and dismiss the complaint, despite the fact that the audit had by then been conducted, was clearly an erroneous result which essentially rewrote the parties' agreement, rendering the audit irrelevant and allowing the City an inequitable windfall.

The motion court also erred, with regard to the City's first counterclaim, in excluding the cost of asbestos abatement from plaintiff's baseline operating expenses for purposes of calculating the rent escalations. While the cost of asbestos abatement is deemed the landlord's responsibility pursuant to a lease amendment provision enacted in 1990 by the Board of Estimate as well as by Administrative Code of the City of New York § 27-128 and Local Law No. 76 (1985) of the City of New York (*see Wolf v 2539 Realty Assoc.*, 161 AD2d 11, 14 [1990]), the rent escalation clause, a privately negotiated commercial lease provision, requires that the City generally share the landlord's costs for "services, materials and supplies furnished in connection with the operation, repair and maintenance of * * * the Building." Although the leases specifically excluded some costs from the operating expenses used in the calculation of the rent escalation, they never excluded asbestos abatement costs or repair costs deemed "extraordinary and structural," even after the asbestos problem became apparent. In fact, the rent escalation clause is a covenant to partially shift responsibility for asbestos abatement from the landlord to the tenant (*see Chemical Bank v Stahl*, 272 AD2d 1, 16 [2000]; *Marine Midland Bank v 140 Broadway Co.*, 236 AD2d 232, 233 [1997]). Hence, here, there was no bar to the landlord passing these costs along and no basis for the motion court, in the absence of the type of tenant repair clause at issue in *Wolf*, to impose by analogy the outcome in that case on this one.

Furthermore, the court erred in excluding the asbestos problem from operating expenses, alternatively, as a "cost[ ] of correcting defects in the construction of the Building" pursuant to the lease. As the *Wolf* Court noted, asbestos abatement is not in the nature of a repair of a defect, but a "remedial mea-

sure[ ] * * * mandated by a supervening change in governmental policy" (*Wolf*, 161 AD2d at 15). In addition, since the asbestos was not a "defect," the court's second alternative rationale, which as a matter of construction of the lease provisions found the lease's "defect[ ]" exclusion to be controlling, as more specific, over the general definition of an "operating expense," was also error. Finally, no authority was cited by the court in support of the legislative intent rationale it offered for imposing this expense solely on plaintiff landlord.

The motion court correctly denied the parties' competing claims for summary judgment on the issue of whether the provision in the rent escalation clause classifying capital expenditures, for appropriate replacement rather than repair of "[b]uilding equipment and property," as "operating expenses" should apply to certain of plaintiff's costs. Among other things, plaintiff failed to set forth evidence sufficient to demonstrate a prima facie case for entitlement to judgment on this issue. Concur—Buckley, P.J., Nardelli, Mazzarelli, Williams and Gonzalez, JJ.