120 APPELLATE COURT OF INDIANA,

Vandalia R. Co. *v.* Fort Wayne, etc., Traction Co.—68 Ind. App. 120.

## VANDALIA RAILROAD COMPANY *v.* FORT WAYNE AND NORTHERN INDIANA TRACTION COMPANY.

[No. 9,550. Filed February 26, 1918. Rehearing denied June 25, 1918.]

1. RAILROADS.—*Regulation.—Crossings.—Police Power.*—The public has a vital interest in the proper maintenance of street railway crossings over railroads, and statutory regulation of the establishment and the maintenance of such crossings fall within the police power of the state. p. 128.

2. RAILROADS.—*Crossing other Railroads.—Contracts.—Public Policy.—Statutes.*—Sections 5676, 5677 Burns 1914, Acts 1901 p. 461, §§2, 3, as to the expense of the establishment of the crossing of a street railroad over the tracks of other railroads, and the subsequent maintenance of such crossings, in effect declare the public policy of the state to be against leaving open to contract, speculation or controversy, the question of who shall make necessary repairs to such crossings, or charged with the duty of maintaining and keeping in repair its own tracks. p. 129.

3. STREET RAILROADS.—*Use of Streets.—Easement.—Scope.*—A street or interurban railroad laid upon a public street by permission of the proper municipal authorities does not constitute an additional burden or servitude, but is within the uses legally contemplated by the grant of the easement. p. 129.

4. RAILROADS.—*Crossing other Railroads.—Agreement.—Validity.—Public Policy.—Consideration.—Statutes.*—A contract under the terms of which defendant railway granted to plaintiff street railway a right to forever maintain a single track across the tracks and right of way of defendant in consideration that plaintiff maintain the necessary crossings at its own expense, is invalid as against public policy, and in violation of §§5676, 5677 Burns 1914, Acts 1901 p. 461, §§2, 3, as to the expense of the establishment of such crossing and their subsequent maintenance; and such contract was unenforceable as not being supported by any sufficient consideration, since plaintiff already had the right, regardless of the contract, of crossing the tracks of defendant railroad. pp. 130, 131.

5. CONTRACTS.—*Valuable Consideration.*—The mere withdrawal of an objection which there is no legal right to interpose, or consent given to do something which may be legally done without such consent, does not afford a sufficient consideration to support a contract. p. 130.

From Allen Circuit Court; *John W. Eggeman,* Judge.

Action by the Fort Wayne and Northern Indiana Traction Company against the Vandalia Railroad Company and another. From a judgment for plaintiff, the named defendant appeals. *Affirmed.*

*Samuel Parker, D. P. Williams, W. G. Crabill* and *S. J. Crumpacker,* for appellant.

*Barrett, Morris & Hoffman,* for appellee.

FELT, J.—Appellee brought this suit against appellant to recover one-half the cost of renewing certain highway crossings where the tracks of said companies crossed each other in the city of Logansport, Indiana.

The complaint is in three paragraphs, to which a general denial was filed. The parties also agreed that all evidence admissible under any affirmative answers that could be filed to the complaint might be heard under the general denial, and that any proper evidence of the plaintiff in reply should be received without further pleadings.

The Fort Wayne and Wabash Valley Traction Company was made a party defendant, and filed an answer admitting that it had assigned and transferred to appellee the claim described in the third paragraph of complaint, and that it had no further interest in such claim.

The court found for appellee in the sum of $1,254.48, overruled appellant's motion for a new trial, and rendered judgment for appellee in the sum aforesaid.

The only error assigned and relied on for reversal is the overruling of the motion for a new trial.

"The three paragraphs of complaint are substantially alike. In substance, it is alleged that Fort Wayne and Wabash Valley Traction Company originally constructed the crossings, described separately in each paragraph of the complaint, of its track and the track of appellant, on public streets in the city of Logansport, at its own expense; and that the crossings, so constructed by it, became worn and unfit for use, and that the appellant thereupon notified the appellee, who became the owner by purchase, on February 28th, 1911, of the street railroad owned by Fort Wayne and Wabash Valley Traction Company, to replace and renew the crossings, and of the notice from the appellant, the appellee replaced 'and' renewed the crossings, described in the first and second paragraphs of the complaint and, under like conditions and circumstances, Fort Wayne and Wabash Valley Traction Company renewed the crossing described in the third paragraph, at its own expense, and thereafter sold and transferred its claim therefor against appellant to the appellee; that after the several crossings were replaced and renewed, demand was made upon the appellant to pay one-half of the cost thereof; that appellant declined to pay the one-half of such cost, and that under the facts alleged, and under the law, the appellant became liable to the appellee for one-half the expense of renewing the crossings."

A new trial was asked on the ground that (1) the decision of the court is not sustained by sufficient evidence, and (2) is contrary to law.

There is no dispute in the evidence as to any material fact in the case. It shows that appellant is a steam railroad corporation organized under the laws

of the States of Illinois and Indiana, and that prior to January 1, 1905, it acquired and owned the lines of railroads which pass through the city of Logansport, Indiana, and cross Michigan avenue and Sixth street in said city; that such avenue and street were duly dedicated and used as public streets before said railroad tracks were laid across them; that prior to the time when appellant acquired and became the owner of said railroads, a corporation known as the Logansport, Rochester and Northern Traction Company was duly organized under the laws of Indiana, and authorized to own and operate interurban and street railroads; that on July 22, 1902, the common council of said city duly enacted an ordinance under which said interurban company, its successors and assigns, were granted the right to lay street car tracks and operate street cars over and upon the said street and avenue. Thereafter said interurban company began laying its tracks on said streets, and to complete its lines it was necessary to cross the tracks of the Terre Haute and Logansport Railway Company at two places on Michigan avenue and the tracks of the Logansport and Toledo Railway Company at one place, and it was also necessary to cross the tracks of each of said railroad companies once on Sixth street. On July 22, 1902, the Logansport, Rochester and Northern Traction Company, and each of said railway companies aforesaid, entered into written contracts, whereby said railway companies granted to said traction company the right to construct and forever maintain and operate a single track interurban railway across the tracks of said railway companies at each of the aforesaid crossings. Subsequently thereto said traction company laid its

124 APPELLATE COURT OF INDIANA,

Vandalia R. Co. v. Fort Wayne, etc., Traction Co.—68 Ind. App. 120.

tracks across the railway tracks aforesaid, and installed suitable crossings in conformity to the provisions of said contracts. In 1904 said Logansport, Rochester and Northern Traction Company sold, and by written instrument transferred, its said property to Fort Wayne and Wabash Valley Traction Company, and on February 27, 1911, the latter company in like manner transferred said interurban property to appellee. By consolidation of certain railroads appellant became the owner of the railway lines aforesaid, and on or about November 1, 1912, notified Fort Wayne and Wabash Valley Traction Company and appellee to renew and put in the crossings aforesaid, and stated in its written notices that it would remove said crossings and put in straight rails unless the same were renewed by appellee; that thereupon appellee notified appellant that it would renew each of said crossings, and when the work was completed would bill against appellant for its part of the cost thereof. Thereafter the work was completed, and demand made on appellant for payment of one-half of the cost of renewing the several crossings aforsaid, and payment was refused.

Except as to names, the contracts in relation to the crossings aforesaid are substantially alike. Said agreement as far as material here is as follows:

"Article I.

"In consideration of and upon the condition and covenants hereinafter stated, to be by the second party kept and performed, the first party hereby grants to the second party the right to construct and forever maintain and operate its single track street and interurban railway upon

and across the right of way and tracks of the first party, at the following points in the City of Logansport, State of Indiana, to-wit: Once on Sixth Street and twice on Michigan Avenue, as shown on the blue print hereto attached and made part hereof, marked Exhibit "A," and being the points where said railway of the second party now crosses the right of way and tracks of the first party.

## "Article II.

"In consideration of the premises, the second party hereby agrees that it will construct and maintain its wires beneath the wires of the first party, so as to clear the lowest wire of the first party by at least five (5) feet, and that the second party's wires shall always be at least twenty-two (22) feet above the top of the rail of the first party's track; and, in case the wires of the first party as now constructed will not permit the construction of the wires of the second party as herein provided, then the second party will bear all of the expense of changing the wires of the first party so that the wires of the second party may be constructed as herein provided. The second party further agrees that it will, at its own expense, construct and maintain guard wires in such manner as will be designated by the first party from all possible danger of contact with the wires of the second party.

## "Article III.

"The second party further agrees that it will, at its own expense and under the direction of the Engineer of Maintenance of Way of the first

party, furnish and construct the necessary cross-
ing fixtures, rails, ties and all other materials
necessary to make such crossings safe and ac-
ceptable to said Engineer, and will likewise at all
times hereafter at its own expense maintain said
crossings in like manner; and will also at its
own expense furnish and maintain such addi-
tional crossing fixtures, rails, ties and other mate-
rials and construct and perpetually maintain in
like manner such additional crossings as may
from time to time become necessary by reason
of the intersection of the railway of said second
party with any additional track or tracks that
may hereafter be laid by the first party upon its
right of way; and in order to provide suitable
protection against danger to human life, the sec-
ond party hereby further agrees and covenants
that it will at its own expense construct and for-
ever maintain in its track at the proper distance
from the tracks of the first party and on both
sides thereof, at each of the crossings aforesaid,
and in proper manner, a derailment device, con-
sisting of a switching connection, the normal
position of which shall be such that a street car
passing over it will be derailed and turned from
its course towards the first party's tracks, and
that such derailment can only be avoided by a
movement of the switch on the opposite side of
the first party's tracks from that on which the
second party's car may be approaching. And
if under the now existing law, the construction
and maintenance of other safety devices at said
crossings, or either of them, shall ever be re-
quired, then the second party hereby covenants

MAY TERM, 1918.    127

Vandalia R. Co. *v.* Fort Wayne, etc., Traction Co.—68 Ind. App. 120.

and agrees that it will construct and maintain the same at its own expense.'

At the trial the parties entered into a stipulation, a part of which is as follows:

"The only consideration given for the execution by the Logansport, Rochester & Northern Traction Company of either of said written contracts, one with the Terre Haute & Logansport Railway Company, and the other with the Logansport & Toledo Railway Company, heretofore set out in this statement, or for any of its promises and agreements therein contained was the grant by the first parties to said contracts to said Traction Company to lay and maintain its tracks on said Avenue and Streets across the tracks of. said first parties as expressed in Articles I of each of said contracts, but the plaintiff denies that such grant constituted any consideration for the promises of said Traction Company in said contracts contained."

Appellant states in its briefs that there are only two questions in the case, viz.: (1) Were the two contracts aforesaid relating to the crossings valid between the original parties thereto? (2) If valid between the original parties, are they binding upon their successors in title, the appellant and appellee?

Appellant insists that each of said questions should be answered in the affirmative, and in support thereof invokes the provisions of the contracts as to details relating to the crossings and the provisions of §5654 Burns 1914, Acts 1903 p. 330, §3, under which it asserts that appellant was a creditor of appellee.

Appellee asserts that the contracts were executed

without any consideration, and were invalid and unenforceable as between the original parties; that in any event they were not binding upon either appellant or appellee; that the construction and repair, or renewal of such crossings is regulated by statute; that such contracts are against public policy and unenforceable.

Sections 2 and 3 of the acts of 1901, Acts 1901 p. 461, being §§5676, 5677 Burns 1914, provide as follows:

5676—"Where it becomes necessary for the track or trolley wires of one street railroad company to cross the track or trolley wires of another street railroad company, or the track of any railroad company, the company owning the road last constructed at such crossing shall, unless otherwise agreed to between such companies, be at the exclusive expense of constructing such crossing in a manner to be convenient and safe for both companies."

5677—"Whenever such railroad crossing is constructed in the manner provided for in the preceding section, it shall be the duty of each company, respectively, to maintain and keep in repair its own track, so as at all times to provide a ready, safe and convenient crossing for all locomotives, trains or cars passing on either road at such point."

The above statutes were in force when the contracts involved in this suit were executed and have remained in force continuously since their enactment.

The public has a vital interest in the proper maintenance of crossings of the kind involved in this controversy. The safety of persons transported 1. over the crossings by such common carriers, and likewise the safety of other persons who

use the streets and pass over the crossings, is involved. The subject falls within the police powers of the state and is an appropriate field for legislative enactment.

The statutes, *supra,* in effect declare the public policy of the state to be against leaving open to contract, speculation, or controversy, the question 2. of who shall make necessary repairs to such crossings, or when they shall be made, and by such legislative enactment declares the policy of the state to be that the duty of maintaining and keeping in repair its own track at such crossings shall rest upon each company respectively, "so as at all times to provide a ready, safe and convenient crossing for all locomotives, trains or cars passing on either road at such point." *Railroad Commission, etc.* v. *Grand Trunk, etc., R. Co.* (1912), 179 Ind. 255, 259, 100 N. E. 852; *Hirth-Krause Co.* v. *Cohen* (1911), 177 Ind. 1, 9, 97 N. E. 1, Ann. Cas. 1914C 708; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, 410, 16 N. E. 121; *Vandalia R. Co.* v. *Railroad Commission, etc.* (1914), 182 Ind. 382, 387, 101 N. E. 85; *Pittsburgh, etc., R. Co.* v. *City of Hartford City* (1908), 170 Ind. 674, 677, 82 N. E. 787, 85 N. E. 362, 20 L. R. A. (N. S.) 461; *Louisville, etc., R. Co.* v. *Mottley* (1911), 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 300, 34 L. R. A. (N. S.) 671; *Chicago, etc., R. Co.* v. *McGuire* (1911), 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328, 338.

Under the law as declared in this state a street or interurban railroad laid upon a public street, by permission of the proper municipal authorities, 3. does not constitute an additional burden or servitude upon such street, but is within the

uses legally contemplated by the grant of such easement.

The undisputed facts of this case show that appellee's predecessor or the original owner of said street or interurban railway had the legal right to 4. lay its tracks across the tracks of said steam railway companies from whom appellant derived title to its property, and said street railway company, or its lawful successors in ownership, had, and still have, the right to maintain said tracks, and to operate cars thereon, all without the consent of the steam railway companies aforesaid, and against the will or desire of appellant. *Pittsburgh, etc., R. Co.* v. *Muncie, etc., Traction Co.* (1909), 174 Ind. 167, 176, 91 N. E. 600, and cases cited; *Baltimore, etc., R. Co.* v. *Cincinnati, etc., R. Co.* (1912), 52 Ind. App. 639, 644, 99 N. E. 1018, and cases cited.

By agreement of the parties it is stated that the only consideration supporting the contracts relating to the several crossings aforesaid was the grant by the steam roads to the traction company of the right to lay and maintain its tracks on said street and avenue across the tracks of the steam roads ''as expressed in Article I of each of said contracts.''

The traction company therefore acquired no legal right that it did not already possess before entering into such contract. The mere withdrawal of an 5. objection which the party objecting had no legal right to interpose, or consent given to the doing of something which the party granted such consent had the legal right to do independent of such consent, does not afford a sufficient consideration to support a contract. *Baltimore, etc., R. Co.* v. *Cincinnati, etc., R. Co., supra,* and cases cited on page 644;

*Shortle* v. *Terre Haute, etc., R. Co.* (1892), 131 Ind. 338, 340, 30 N. E. 1084.

Appellant contends that the provisions in the contracts under consideration relating to the details of construction take them out of the above rule, and afford sufficient consideration to support the contracts. The contracts considered in their entirety, the express agreement of the parties as to the consideration and the statutes, *supra,* preclude such conclusion, and show conclusively that the contracts relate primarily to the right of the street car company to lay its tracks across the tracks of the steam roads.

The details of plan and construction that may lawfully be the subject of contract between such companies whose tracks cross each other are not the controlling features of the contracts now under consideration. If it be conceded, which is not done, by appellee in this instance, that some details are mentioned in the contracts, it is nevertheless apparent that they are incidental only, and that the main features of the contract are as above stated.

Reference has been made to the case of *Evansville, etc., Traction Co.* v. *Evansville Belt R. Co.* (1909), 44 Ind. App. 155, 87 N. E. 21, as supporting appellant's view of the contracts in controversy here.

The case is not in necessary conflict with the views above expressed. The subject is only discussed in a general way, and is not decisive of the questions presented in this case. The statute, *supra,* relating to the duty of such companies to repair and maintain such crossings had not been enacted when the contract considered in that case was executed. That contract was entered into in 1892, and the statute was

enacted in 1901. §§2, 3, Acts 1901 pp. 461 *supra*.

Considering the facts of this case in the light of the statute and the decisions of this court and of our Supreme Court, we hold the contracts above mentioned to be invalid and unenforceable for two reasons, viz.: (1) They are against public policy and in violation of the provisions of an express statute relating to the subject-matter of the agreements. (2) They are not supported by any sufficient consideration.

We find no reversible error in the record. Judgment affirmed.

NOTE.—Reported in 118 N. E. 839. See under (1) 33 Cyc 240, 242; (2) 33 Cyc 240, 242.