■ BUSH TERMINAL ASSOCIATES, Respondent-Appellant, v FEDERATED DEPARTMENT STORES, INC., Appellant-Respondent.—In an action by a land-lord to recover money for work performed on leased premises, the parties cross-appeal from an order of the Supreme Court, Kings County, dated October 30, 1978, which denied the defendant tenant's motion for summary judgment upon finding that triable issues of fact exist. Order reversed, on the law, with $50 costs and disbursements payable to defendant, and defendant's motion for summary judgment granted. Plaintiff, Bush Terminal Associates, is the landlord of a 16-building complex, located in Brooklyn, New York, and known as Bush Terminal. In 1965 one building was leased to defendant, Federated Department Stores, Inc., under a comprehensive 10-year lease that could be renewed for two successive 11-year terms. The option to renew has already been exercised for one such term. The defen-dant uses the demised premises as a warehouse for its Abraham & Straus chain of department stores. Located in the premises are lavatory facilities which, upon normal use, discharge raw sewage into the Gowanus Canal and New York Bay. This discharge was considered to be in contravention of the 1972 Federal Water Pollution Control Act Amendments and, in 1974, the United States Environmental Protection Agency (EPA) directed the plaintiff to cease the discharge of raw sewage and to construct new sewer lines from the leased premises to the main New York City sewer line. Plaintiff complied with the EPA directive and now seeks to recover the cost of constructing the new sewer lines from the defendant tenant. Plaintiff relies on two sections of the lease for the proposition that the tenant is obligated to bear the cost of installing the new sewer lines. Section 5.1 of the lease provides: "Tenant may use the Demised Premises for any lawful purpose. Tenant will not at any time use or occupy the Demised Premises, in violation of the certificate of occupancy or any law, ordinance, rule or regulation duly promulgated by governmental authority having jurisdiction

in the premises." Section 10.1 of the lease provides: "Throughout the term of this Lease, Tenant, at Tenant's sole cost and expense, shall promptly remove any violation caused by Tenant and shall, with respect to the manner and use by Tenant of the Demised Premises, promptly comply with any and all present and future laws and ordinances which may affect or be applicable to the Demised Premises or any part thereof, or the sidewalks, curbs, vaults passageways, alleys, entrances, coverings or rooflike structures placed upon or extending over any sidewalk, or any space adjacent thereto, or to the use or manner of use of the Demised Premises or any part thereof, or the owners, tenants, or occupants thereof, whether or not any such violation or any such law, ordinances, order, rule, regulation or requirement shall necessitate structural changes required by reason of the manner of Tenant's use of the Demised Premises, additions, improvements, the removal of any structure, encroachments or projections, ornamental or structural, that Tenant shall have placed or consented to have placed upon the Demised Premises, onto or over the streets or avenue adjacent thereto, and whether or not the correction or removal so necessitated shall have been foreseen or unforeseen or whether the same shall involve radical or extraordinary construction or other disposition, provided such violation or order results from the character of the Tenant's occupancy. Tenant's manner of use of the Demised Premises, Tenant's manner of conducting its business in the Demised Premises, or Tenant's failure to maintain the Demised Premises and the equipment therein which are the Tenant's obligation to maintain and keep in good order and condition pursuant to the terms of this Lease." Generally, "the obligation to comply with legal requirements affecting real property is on its owner" (2 Friedman, Leases, § 11.1, p 471) and absent an express covenant to the contrary, the tenant has no obligation to undertake significant structural alterations. Section 5.1 of the lease imposes no such obligation and requires only that the tenant use the premises for a lawful purpose. There is no question that defendant's use of the demised premises as a warehouse for its department stores is in full accord with this provision. Section 10.1 more clearly requires the tenant to bar the cost of complying with all laws, rules, regulations, and requirements affecting the demised premises. However, this section applies only to those changes necessitated by the "manner and use by Tenant of the Demised Premises". The compliance aspect of section 10.1 is further qualified by section 10.3, which expressly states that tenant has no obligation to make any substantial structural alteration or repair unless it is "required as a result of misuse or neglect by Tenant * * * or by reason of Tenant's use or manner of conducting its business". As applied to the case at bar, the defendant tenant is obligated to bear the cost of those repairs and alterations which are necessitated by the manner of its use of the premises. It is plain, however, that the tenant's use of lavatory facilities contained in the premises is wholly incidental to the concept of the tenant's manner of using the premises. Rather than resulting from the character of defendant's use of the premises, any occupancy of the premises, by any tenant, would have required the installation of a new sewer system. It is that factor which distinguishes this case from the line of authority represented by *Cohen v E. & J. Bass* (246 NY 270), wherein courts have imposed upon tenants the obligation of making structural alterations or repairs to comply with local laws or regulations when such compliance was required because of the character of a tenant's occupancy. Here, alteration of the sewer system constitutes an integral structual change which affects the integrity and value of the building, regardless of the lessee or how the building is used. As

such, the clear and unambiguous language contained in section 10.3 leaves no doubt that the defendant tenant has no obligation to bear the cost of complying with the EPA directive. The plaintiff's contention that the parties entered into a "net lease" which would require the tenant to assume all costs, is of no avail. The lease is replete with obligations which the landlord has retained regarding the maintenance and repair of the building. Of particular note is section 4.2 which, *inter alia*, requires the landlord to construct at no cost to the tenant the necessary facilities to purchase water. Having covenanted to provide water and other utilities, the landlord may not now seek to either prevent the tenant from using such services, or to compel the tenant to seek out such services in other buildings within Bush Terminal. On this record there are no material questions of fact. The terms of the lease are clear and unambiguous and, contrary to the plaintiff's contentions, we find no basis to hold the defendant liable for the cost of complying with the EPA directive. Therefore, the defendant's motion for summary judgment dismissing the complaint should have been granted. Hopkins, J. P., Mangano, Rabin and Gulotta, JJ., concur.