OPINION OF THE COURT
Myriam J. Altman, J.
Plaintiff Rapid-American Corp. (Rapid) moves for summary judgment on the first and second causes of action asserted in its complaint. At issue on this motion is whether plaintiff *967 tenant or defendants landlord should bear the cost of asbestos removal at the demised premises.[1]
Rapid[2] leases the 25th through 44th floors of an office building located at 888 7th Avenue pursuant to a lease dated March 25, 1969 between Glen Alden Corporation (Glen Alden), plaintiff’s corporate predecessor, and Arlen Operating Company, a predecessor in interest to defendant 888 7th Avenue Associates Limited Partnership (Associates), the owner of the building. Defendant MRI-888 Rental Investments, Inc. is the general partner of Associates. The lease, which initially provided for a term of 25 years commencing in 1970, was subsequently extended for an additional 10 years and will expire on October 31, 2005.
Pursuant to the terms of the lease, Rapid has the absolute right to sublet certain portions of the demised premises (§ 9.03) and the right to sublet all or other parts, subject to the consent of the landlord which cannot be unreasonably withheld (§ 9.06). Since 1970, Rapid and its predecessor have regularly sublet substantial portions of the leased premises. Presently, approximately 87% of the space is leased to various subtenants. Rapid has often renovated space to meet the needs of subtenants.
In 1985, New York City enacted Local Law No. 76 which "requires, among other things, that the presence and condition of asbestos be ascertained before any building alteration or demolition is performed; that asbestos be removed or encapsulated if such work will cause asbestos to become airborne; and that all asbestos abatement activities be conducted in accordance with approved safety procedures” (Kaufman v City of New York, 891 F2d 446, cert denied 495 US 957). It does not require removal of undisturbed asbestos or asbestos that will not be disturbed by alteration or demolition (supra, at 446).
Rapid thereafter retained ATC Laboratories, Inc. (ATC) to conduct an asbestos assessment survey of the leased premises. The survey revealed the presence of asbestos-containing material in the form of sprayed-on fireproofing on interior and *968 exterior steel risers and horizontal supporting members. ATC found the material to be in "fair to poor shape” and recommended that the material be removed as demolition or renovation occurs. Thus, Rapid decided to remove all asbestos-containing material during the course of renovations. If any material posed a danger in areas not being renovated, those areas would be monitored and interim steps would be taken to remove any loose asbestos-containing material.
Rapid took the position that the removal was defendants’ responsibility under the lease and requested that they assume the expense. Defendants denied the request, indicating that the lease required Rapid to perform all renovations in accordance with applicable laws at its own expense. After notification to defendants, Rapid undertook the asbestos removal work. Thus far, it has expended nearly $3,000,000 on the project. Defendants refused to reimburse Rapid for the work and Rapid commenced this action. In the first cause of action, it seeks a declaration that defendants are responsible for removing asbestos-containing material from the premises. In its second cause of action, Rapid seeks reimbursement for the expenses it has incurred pursuant to section 30.03 of the lease which gives Rapid the right to perform defendants’ obligations at defendants’ expense after notification.
Rapid and defendants rely on various lease provisions to support their respective positions. The relevant provisions are as follows:
"4.03. If and when Tenant shall take actual possession of the Demised Premises, it shall be conclusively presumed that the same were in satisfactory condition (except for latent defects) as of the date of such taking of possession, unless within one year after such date Tenant shall give Landlord notice specifying the respects in which the Demised Premises were not in satisfactory condition * * *
"10.01. Tenant shall give prompt notice to Landlord of any notice it receives from any governmental authority of the violation of any law or requirement of public authority, and at its expense shall comply with all laws and requirements of public authorities which shall, with respect to the use and occupancy of the Demised Premises, or the abatement of any nuisance, impose any violation, order or duty on Landlord or Tenant, arising from (i) Tenant’s use of the Demised Premises, (ii) the manner of conduct of Tenant’s business or operation of its installations, equipment or other property therein, (iii) any *969 cause or condition created by or at the instance of Tenant, other than by Landlord’s performance of any work for or on behalf of Tenant, or (iv) breach of any of Tenant’s obligations hereunder. However, Tenant shall not be so required to make any structural or other substantial change in the Demised Premises unless the requirement arises from a cause or condition referred to in clause (ii), (iii) or (iv) above * * * Landlord, at its expense, shall comply with all other such laws and requirements of public authorities as shall affect the Building and the Demised Premises * * *
"13.01. Tenant may from time to time during the term of this lease, at its expense, make such alterations, additions, installations, substitutions, improvements and decorations (hereinafter collectively called changes and, as applied to changes provided for in this Article, Tenant’s Changes) in and to the Demised Premises, excluding structural changes, as Tenant may reasonably consider necessary for its use of the Demised Premises, on the following conditions:
"(a) The strength of the Building or of any of its structural parts shall not be affected * * *
"(c) The proper functioning of any of the mechanical, electrical, sanitary and other service systems of the Building shall not be adversely affected or the usage of such systems by Tenant shall not he materially increased. In the event that the adverse affect or the materially increased usage may be overcome by the modification of the existing systems or an installation of additional systems, this condition shall not prohibit Tenant’s Changes provided Tenant, at its own cost and expense will modify the existing system or install the additional systems or directs Landlord to do so at Tenant’s expense.
"(d) In performing the work involved in making such changes, Tenant shall be bound by and observe all of the conditions and covenants contained in the following Sections of this Article.
"(e) Before proceeding with any change which it is estimated will cost more than $25,000 (exclusive of the costs of decorating work and items constituting Tenant’s Property, as defined in Article 14, and of any architect’s and engineer’s fees), Tenant shall submit to Landlord plans and specifications for the work to be done, for Landlord’s approval, which shall not be unreasonably withheld * * *
"Structural changes shall not be made without Landlord’s *970 consent but Landlord agrees that it will not unreasonably withhold or delay its consent for any structural change which Tenant may reasonably consider necessary for its use of the Demised Premises.
"13.02. Tenant, at its expense, shall obtain all necessary governmental permits and certificates for the commencement and prosecution of Tenant’s Changes and for final approval thereof upon completion, and shall cause Tenant’s Changes to be performed in compliance therewith and with all applicable laws and requirements of public authorities, and with all applicable requirements of insurance bodies, and in good and workmanlike manner, using new materials and equipment at least equal in quality and class to the original installations in the Building. Tenant’s Changes shall be performed in such manner as not to unreasonably interfere with or delay or impose any additional expense upon Landlord in the construction, maintenance or operation of the Building unless Tenant shall indemnify Landlord therefor to the latter’s reasonable satisfaction * * *
"15.01. Tenant shall take good care of the Demised Premises. Tenant, at its expense * * * shall promptly make all repairs, ordinary or extraordinary, interior or exterior, structural or otherwise, in and about the Demised Premises and the Building, as shall be required by reason of (i) the performance or existence of Tenant’s Work or Tenant’s Changes * * *
"15.02. Landlord, at its expense, shall keep and maintain the Building and its fixtures, appurtenances, systems and facilities serving the Demised Premises, in good working order, condition and repair and shall make all repairs, structural and otherwise, interior and exterior, as and when needed in or about the Demised Premises, except for those repairs for which Tenant is responsible pursuant to any other provisions of this lease. Landlord agrees that it will, throughout the term of this lease, maintain and operate the Building in a manner comparable to the standard of operation of other first class office buildings in the vicinity of the Building * * *
"19.01. All perimeter walls and windows thereof, including exterior Building walls and corridor walls (except the inside surfaces thereof) and any terraces or roofs adjacent to the Demised Premises, and any space in or adjacent to the Demised Premises used for shafts, stacks, pipes, conduits, fan rooms, ducts, electric or other utilities, sinks or other Building *971 facilities, and the use thereof, as well as access thereto through the Demised Premises as provided elsewhere in this lease for the purposes of operation, maintenance, decoration and repair, are reserved to Landlord.”
Rapid claims that defendants, as owners of the building, are responsible for removal of the asbestos-containing material because the dangerous condition was created by their predecessor which placed the material in the premises. Defendants are required both by law (Administrative Code of City of New York § 27-128) and by the lease (§ 15.02) to maintain the building in good and safe condition. Rapid also claims that the asbestos is a "latent defect” which must be corrected by defendants (§ 4.03), particularly since the material is located in areas which have been reserved to the landlord (§ 19.01).
According to defendants, the asbestos removal work is required only because of the renovations which Rapid performs for its subtenants. Since Rapid is responsible for all costs associated with renovations and must ensure that all work is done in compliance with law (§§ 13.01, 13.02, 15.02), defendants claim that it is Rapid which must bear the expense of asbestos removal. Further, Rapid must comply with all laws which impose any obligations arising from its use of the premises (§ 10.01). Defendants claim that summary judgment must be denied because there are questions of fact regarding: (1) Rapid’s knowledge of the existence of asbestos at the premises prior to 1986; (2) whether the asbestos poses an immediate health hazard; and (3) the intent of the parties to the lease.
Generally, the owner of a building is obligated to comply with all laws affecting the property (Bush Term. Assocs. v Federated Dept. Stores, 73 AD2d 943, 944). Section 27-128 of the Administrative Code of the City of New York provides that "[t]he owner shall be responsible at all times for the safe maintenance of the building and its facilities.” The question then is whether the terms of the parties’ lease shifts that responsibility to Rapid with respect to asbestos removal (see, Wolf v 2539 Realty Assocs., 161 AD2d 11, 14). In construing the terms of a lease and the parties’ intent, the factors to be considered are the nature of the work required, the reason it must be performed, the relative benefit of the work to the parties, the rent payable as compared with the cost of the work, the term of the lease and what the parties contemplated when they entered into the lease (Cohen v Bass, Inc., 246 NY 270; Mayfair Mdse. Co. v Wayne, 415 F2d 23).
*972 Section 10.01 of the lease requires Rapid, at its own expense, to comply with any law imposing a duty which arises from its use of the demised premises. In accordance with sections 13.01 and 13.02, Rapid must bear the costs of renovation and of compliance with all laws and requirements of public authorities in connection with renovations. Rapid must make all repairs, " 'ordinary or extraordinary * * * structural or otherwise,’ ” required because of its renovation work (§ 15.01).
Defendants are required to comply with all laws affecting the building, unless the obligation arises from Rapid’s use of the premises (§ 10.01). Section 15.02 provides that they are to keep and maintain the building in good condition.
The abatement of an asbestos hazard does not constitute a "repair” (see, Wolf v 2539 Realty Assocs., supra, at 15). Thus, although Rapid must make even extraordinary and structural repairs required by its renovation work, the repair clause of the lease does not impose a duty on Rapid to finance the asbestos removal.[3] Repair work "does not entail the assumption of any responsibility for an inherent characteristic of a material employed in the original construction of the premises by the owner or his agents in compliance with then-existing laws and regulations” (supra, at 16).
The lease specifically provides that Rapid is not responsible for "any structural or other substantial change” in the demised premises, unless such change is required by Rapid’s use of the premises (§ 10.01). Consequently, the critical issue in this case is whether the asbestos removal is required by Rapid’s use of the premises.
Defendants claim that Rapid uses the premises for the business of subletting, which entails renovation work. They submit an affidavit from William D’Angelo, the president of Kaselaan & D’Angelo Associates, an environmental engineering firm. Mr. D’Angelo’s firm was retained by defendants’ managing agent to prepare an asbestos operation and maintenance program for the building. After surveying the premises, Mr. D’Angelo concluded, as did ATC, that the asbestos-containing material should be removed when a renovation is *973 scheduled. According to Mr. D’Angelo, ATC’s conclusion that the material is "in fair to poor shape” is purely subjective "with little practical implication” since ATC did not recommend the immediate removal of all asbestos-containing material. As to those areas where renovations are not being performed, both ATC and the D’Angelo firm recommended a maintenance and operations program to minimize the possible release of asbestos fibers. Mr. D’Angelo concluded that the existence of asbestos-containing material does not, in and of itself, present an immediate health hazard in the building. A problem is created only when renovations are performed which disturb the material. Defendants maintain that because asbestos removal is required as a result of Rapid’s renovation work and use of the demised premises and not because of the general condition of the building that the removal is necessitated by Rapid’s use of the premises. At a minimum, they claim there is an issue of fact as to whether the presence of asbestos-containing material constitutes an immediate health hazard.
A governmental compliance clause related to use of the premises "is designed to protect a landlord against the assumption of any additional burden which might be imposed by the necessity to comply with laws and regulations governing the tenant’s particular use of the premises” (Wolf v 2539 Realty Assocs., 161 AD2d 11, 16, supra). Tenants have been required to make even structural alterations to comply with laws when compliance is necessitated by the "character” of the tenant’s occupancy (see, Bush Term. Assocs. v Federated Dept. Stores, 73 AD2d 943, 944, supra). Here, however, the demised premises are being used to sublet office space, the very use contemplated by the lease. Rapid is not occupying or using the premises for any special purpose. Since the inception of the lease, Rapid and its predecessor have been subletting and renovating the space; Rapid has not changed its use of the premises (see, Sullivan v New York United Realty Co., 250 App Div 286; compare, 4370 Park Ave. Corp. v Hunter Paper Co., 10 Misc 2d 1098, affd 6 AD2d 684, lv denied 6 AD2d 866; Cohen v Margolies, 192 App Div 217, affd 232 NY 584). Thus, the duty is imposed by a change in governmental policy, not because of any particular use of the premises; there is no new use running afoul of existing law (see, Herald Sq. Realty Co. v Saks & Co., 215 NY 427; compare, 4370 Park Ave. Corp. v Hunter Paper Co., supra).
The condition was created by the use of asbestos-containing *974 material as fireproofing, not by Rapid’s use of the premises. While there is evidence that the material does not present an immediate hazard unless renovations occur (compare, Wolf v 2539 Realty Assocs., supra; Bush Term. Assocs. v Federated Dept. Stores, supra), the issue is not whether the premises are "safe” in the absence of renovations, but whether the building is in a "safe condition” so that Rapid can use the demised premises in the manner contemplated by the lease (see, Sun Ins. Servs. v 260 Peachtree St., 192 Ga App 482, 483, 385 SE2d 127, 129, cert denied 192 Ga App 903, 396 SE2d 593).
The removal of the asbestos is a substantial change "which affects the integrity and value of the building, regardless of the lessee or how the building is used” (see, Bush Term. Assocs. v Federated Dept. Stores, supra, at 944). Clearly the extraordinary work required was not specifically contemplated by the parties when they entered into the lease (see, Wolf v 2539 Realty Assocs., supra; see also, Sullivan v New York United Realty Co., supra; compare, 4370 Park Ave. Corp. v Hunter Paper Co., supra). Although Rapid has a long-term lease, it is defendants who will reap the ultimate benefits of the work as the over-all value of their building will increase[4] (see, Sun Ins. Servs. v 260 Peachtree St., supra).
Since the removal requirement does not arise out of Rapid’s use of the premises, there is no provision in the lease which shifts the responsibility for the expense of removal to it. In fact, the lease specifically provides that Rapid is not responsible for structural or substantial changes unless they arise from its use. Defendants, under both the law and the lease, are required to keep the building in good, safe condition and in compliance with all laws.
The lease places the obligation for such an extraordinary expense on defendants (see, Herald Sq. Realty Co. v Saks & Co., supra) and I find no issue of fact regarding the parties’ intent. Whether there is an immediate health hazard or a potential health hazard does not alter defendants’ responsibility. Similarly it is irrelevant whether the asbestos-containing material can technically be considered a latent defect or whether Rapid’s predecessor had knowledge of its use as fireproofing material. The asbestos removal constitutes substantial work which must be performed by defendants as *975 owners of the building under general principles of law and the terms of the lease.
Consequently, Rapid’s motion for summary judgment on its first and second causes of action is granted. Rapid shall submit the bills and proof of payment for the work that has been performed thus far with the order and judgment to be settled hereon.

. Because the cost of removal is so high, I asked the parties to brief the additional issue of whether performance under the lease should be excused due to the unforeseen increased financial burden. Both sides agree that the economic impact does not excuse performance of the lease obligations.

. Rapid assigned its entire interest in the lease to its affiliate, McCrory Parent Corp., in 1989. This action is being continued in Rapid’s name in accordance with CPLR 1018.

. Defendants concede that the repair clause, in and of itself, does not require Rapid to remove the asbestos-containing material. Rather, defendants claim that it is "illustrative of the all-encompassing nature of Rapid’s assumption of responsibility for the consequences of renovations it elects to undertake”.

. Rapid does not have an option to purchase, nor does it occupy the entire building (compare, Roosevelt Hotel Corp. v Letoh Assocs., NYLJ, Apr. 12,1991, at 22, col 6).