**FRESH CUT, INC., Appellant,**

v.

**Bert FAZLI, Appellee.**

**No. 49S02–9505–CV–596.**

Supreme Court of Indiana.

May 24, 1995.

Michael V. Gooch, John S. Beeman, Ronald W. Frazier, Harrison & Moberly, and Karl L. Mulvaney and Tammy J. Meyer, Bingham Summers Welsh & Spilman, Indianapolis, for appellant Fresh Cut, Inc.

Timothy E. Hollingsworth, Henderson, Daily, Withrow, DeVoe and James P. Cavanaugh, III, Indianapolis, for appellee Bert Fazli.

1. These words are lined out in the lease, apparently reflecting the agreement of the parties that maintenance and repair of the roof, exterior

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

This case grows out of a dispute between a warehouse's owner and tenant over responsibility for maintaining the fire protection sprinkler system. Where a municipal ordinance requires an owner of commercial property to maintain a fire protection sprinkler system, can the owner shift this responsibility to a tenant by written agreement? If so, did the lease at issue here shift this responsibility to the tenant? The Court of Appeals answered both these questions in the affirmative. *Fresh Cut, Inc. v. Fazli* (1994), Ind. App., 630 N.E.2d 575, *reh'g denied.* We agree with the Court of Appeals as to the first question but conclude that genuine issues of material fact remain as to the second.

*Facts*

On or about August 27, 1986, tenant Fresh Cut, Inc., leased part of a warehouse in Indianapolis from owner Bert Fazli pursuant to the terms of a written lease. Paragraphs five and six of the lease provide:

> 5. Lessee [tenant] shall not use the Leased Premises or fail to maintain them in any manner constituting a violation of any ordinance, statute, regulations, or order of any governmental authority.... The Lessee covenants and agrees that the Lessee will use, maintain and occupy the Leased Premises in a careful, safe, and proper manner and will not commit waste thereon....

> 6. During the term of this Lease the Lessee shall, at his own cost and expense, maintain in good condition and repair the Leased Premises, including but not limited to the electrical systems, heating and air conditioning systems, ~~roof, exterior walls, foundation,~~[1] and structural frame of the building of which such Leased Premises are a part. Lessee shall also maintain in good repair all interior walls and floors....

walls, and foundation remain the responsibility of the owner.

In effect at the time and applicable to the property was the following municipal ordinance:

A sprinkler system installed under this standard shall be properly maintained for efficient service. The owner is responsible for the condition of the sprinkler system and shall use due diligence in keeping the system in good operating condition.

Indianapolis and Marion Co., IN, Code § 12–4 (1987) (incorporating by reference N.F.P.A. 13, Standard for the Installation of Sprinkler Systems (National Fire Prevention Ass'n 1987)).

On August 5, 1989, the portion of the warehouse occupied by tenant burned. Tenant recovered from its property insurance carrier, State Farm Fire & Casualty Company (State Farm), for damage to personal property and costs of business interruption and re-establishing its business operations at another location.

In January of 1990, tenant and State Farm sued owner alleging that the damages suffered by tenant as a result of the fire would have been greatly reduced if owner had not negligently failed to maintain the building's fire protection sprinkler system in operating condition. In June of 1990, owner filed a counterclaim asserting that under paragraphs 5 and 6 of the lease, he was not responsible for ensuring that the sprinkler system functioned properly and that that responsibility had been assumed by tenant.

On February 18, 1992, tenant filed a Motion for Summary Judgment against owner's counterclaim alleging that: (1) owner had a nondelegable duty in accordance with state regulation and municipal ordinance to maintain the fire protection sprinkler system in operating condition, which duty could not be shifted to tenant per the lease contract provisions or otherwise; and (2) even if owner's duty to maintain the sprinkler system may be shifted, tenant did not agree to accept this duty when it signed the lease contract. On September 1, 1992, the trial court denied tenant's summary judgment motion without opinion. Tenant appealed.

The Court of Appeals affirmed the trial court's denial of tenant's summary judgment motion, holding that: (1) owner could validly shift responsibility for maintaining the fire protection sprinkler system to tenant without violating public policy; and (2) the lease contract unambiguously placed responsibility for maintenance of the fire protection sprinkler system on tenant. *Fresh Cut, Inc.*, 630 N.E.2d at 580. Tenant seeks transfer.

I

The principal point of contention in this case is the extent to which the public policy at issue here—an owner's statutory duty to maintain a fire protection sprinkler system in good operating condition—restricts the freedom of parties to contract. Tenant argues in this interlocutory appeal that, regardless of what might be in the lease, owner had a statutory duty to maintain the fire protection sprinkler system in proper operating condition. Because statutory duties are nondelegable, tenant reasons, public policy requires that any contract that attempts to shift owner's duty in this regard is invalid. And if the contract is invalid, tenant concludes, owner could not recover on his breach of contract counterclaim, and tenant should have been granted summary judgment.

A

■ We adopt the analysis used by the Court of Appeals in analyzing this question. Indiana courts recognize the freedom of parties to enter into contracts and, indeed, presume that contracts represent the freely bargained agreement of the parties. *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 463, 276 N.E.2d 144, 147. This reflects the principle that it is in the best interest of the public not to restrict unnecessarily persons' freedom of contract. *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276, 279 (*quoting Hodnick v. Fidelity Trust Co.* (1932), 96 Ind.App. 342, 350, 183 N.E. 488, 491); *see also* Ind. Const. art. I, § 24. A real estate lease is subject to these same principles of contract. *Whiteco Indus., Inc. v. Nickolick* (1991), Ind.App., 571 N.E.2d 1337, 1339, *trans. denied.* While questions frequently arise which question the ability of a party to a contract to shift its liability to a

third party,[2] no such question is present in this case and the ability of parties knowingly and willingly to allocate risk by contract is firmly established. *Weaver*, 257 Ind. at 465, 276 N.E.2d at 148. Except in certain circumstances,[3] this ability of parties to allocate risk by contract extends so far as to permit indemnification for one's own negligence. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.* (1991), Ind., 578 N.E.2d 669, 670.

Despite this very strong presumption of enforceability, courts have refused to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana. This principle is illustrated by recent decisions of both our court and the Court of Appeals. *See Straub v. B.M.T. by Todd* (1994), Ind., 645 N.E.2d 597 (invalidating an agreement pursuant to which a man agreed to impregnate a woman in return for a promise not to assert any child support obligation); *Pigman v. Ameritech Publishing, Inc.* (1994), Ind.App., 641 N.E.2d 1026 (invalidating an exculpatory clause in a Yellow Pages advertising contract), *reh'g denied* (1995), 650 N.E.2d 67.

■ We agree with the factors identified by the Court of Appeals to be considered in determining whether a contract not prohibited by statute or clearly tending to injure the public but nevertheless alleged to contravene public policy should be enforced: (i) the nature of the subject matter of the contract, *e.g., Straub*, 645 N.E.2d at 599; (ii) the strength of the public policy underlying the statute, *e.g., id.;* (iii) the likelihood that refusal to enforce the bargain or term will further that policy, *e.g., Noble v. Alis* (1985), Ind.App., 474 N.E.2d 109, *trans. denied;* (iv) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain, *e.g., Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 975, *reh'g denied, trans. denied;* and (v) the parties' relative bargaining power and freedom to contract, *Pigman*, 641 N.E.2d at 1026.

B

■ Nothing in the municipal ordinance at issue here restricts the ability of an owner to delegate responsibility for sprinkler systems. *See* Code of Indianapolis § 12–4, *supra.* And, given the nature of the subject matter and the parties' relative bargaining power and freedom to contract, we have little difficulty agreeing with the Court of Appeals that, on these facts, a contract shifting responsibility for sprinkler systems from owner to tenant is not void as against public policy. The subject matter of this contract is the lease of commercial real estate. Commercial real estate leases commonly allocate obligations and risks between owner and tenant. *See, e.g.,* Mark A. Senn, *Commercial Real Estate Leases: Preparation and Negotiation* 378–379 (2d ed. 1990). For example, Indiana Code § 6–1.1–2–4 (1993) imposes liability on the owner of real property for property taxes, but the tenant is customarily required to pay its share of real estate taxes on leased commercial property. *Report, A Practical Guide to Reviewing a Commercial Lease*, 19 Real Prop., Prob. & Tr. J. 891, 907 (1984) (reprinted in Milton R. Friedman, *Commercial Real Estate Leases* 859 (1994)). We also agree that there is no evidence of inequality of bargaining power or of impingement on freedom to contract here. *Compare, e.g., Weaver*, 257 Ind. at 463, 276 N.E.2d at 147 (invalidating exculpatory clause in service station lease), with *Allstate Ins. Co. v. Boles*, (1985), Ind., 481 N.E.2d 1096, 1101 (enforcing household exclusion clause in insurance contract). We hold that on this record, there was no public policy impediment to the parties agreeing that tenant would be responsible for maintaining the fire sprinkler system.

II

Holding that the parties were not constrained by public policy to make such a bargain is not the same as holding that they made such a bargain, however.

---

2. *See, e.g., Perryman v. Huber, Hunt & Nichols, Inc.* (1994), Ind.App., 628 N.E.2d 1240, *trans. denied; Massengill v. Indiana Nat'l Bank* (1990), Ind.App., 550 N.E.2d 97, 99; *Stevens v. Thompson* (1988), Ind.App., 525 N.E.2d 353.

3. *E.g.,* certain indemnification clauses in construction contracts are prohibited by Indiana Code § 26–2–5–1 (1993).

A

■ Although the issue has not previously been addressed in Indiana, the general rule is that an owner has the responsibility to comply with statutory obligations affecting leased premises unless a tenant has agreed to assume the obligation. Patrick A. Randolph, Jr., *The Commercial Property Lease* 164 (1993); Annotation, *Who, As Between Landlord and Tenant, Must Make or Bear Expense of Alterations, Improvements, or Repairs Ordered by Public Authorities,* 22 A.L.R.3d 521 (1968) (collecting cases). *Cf.* Restatement (Second) of Property § 5.5, caveat to subsection (1), at 206 (1977) (applying this rule to residential real estate leases). A tenant's covenant merely to repair the premises does not necessarily obligate the tenant to make repairs necessary to comply with statutory requirements or orders of public authorities. Where the alterations or improvements required or ordered are not structural or substantial in nature but constitute mere repairs or replacements, the tenant must bear the expense pursuant to the covenant to repair. Annotation, 22 A.L.R.3d at 529. But where the alterations or improvements required or ordered are of a structural or substantial nature, the owner must bear the expense, absent a showing that it was the intention of the contracting parties that the tenant assume the obligation. Randolph, *The Commercial Property Lease* at 165; Annotation, 22 A.L.R.3d at 537. *Cf. Quebe v. Davis* (1992), Ind.App., 586 N.E.2d 914, 916. Similarly, a tenant's covenant merely to comply with all laws and ordinances obligates the tenant to bear the expense of alterations or improvements required or ordered that are not structural or substantial in nature but constitute mere repairs or replacements. Annotation, 22 A.L.R.3d at 540. But where the alterations or improvements required or ordered are of a structural or substantial nature, the owner must bear the expense, absent a showing that it was the intention of the contracting parties that the tenant assume the obligation. Randolph, *The Commercial Property Lease* at 165; Annotation, 22 A.L.R.3d at 543.

■ Questions of whether obligations to comply with statutes or orders of public authorities have been delegated under the terms of a commercial lease from owner to tenant have appeared with some frequency in other jurisdictions. *See, e.g., Hadian v. Schwartz,* 8 Cal.4th 836, 35 Cal.Rptr.2d 589, 884 P.2d 46 (1994) (seismic reconstruction ordered as part of earthquake hazard reduction program); *Brown v. Green,* 8 Cal.4th 812, 35 Cal.Rptr.2d 598, 884 P.2d 55 (1994) (asbestos removal); *Wolf v. 2539 Realty Assoc.,* 161 A.D.2d 11, 560 N.Y.S.2d 24 (N.Y.App.Div.1990) (asbestos removal); *Bush Terminal Assoc. v. Federated Dep't Stores, Inc.,* 73 A.D.2d 943, 424 N.Y.S.2d 28 (N.Y.App.Div.1980) (new sewer lines); *Mayfair Merchandise Co. v. Wayne,* 415 F.2d 23 (2d Cir.1969) (fire protection sprinkler system); *First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr, Inc.,* 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968) (fire protection sprinkler system), *reargument denied by* 22 N.Y.2d 827, 292 N.Y.S.2d 1031, 239 N.E.2d 659. While these cases stand for the general principles that (i) there is no public policy impediment to the tenant assuming these responsibilities vis-a-vis the owner, *e.g., Brown,* 35 Cal.Rptr.2d at 604, 884 P.2d at 61, and (ii) that neither a covenant to repair nor a covenant to comply with all laws carries with it a duty to make permanent, substantial, or unforeseen building additions or alterations, *e.g., id., cf. Quebe,* 586 N.E.2d at 916, in the end the resolution of each case turns on the precise language of the lease at issue and, in most cases, the facts and circumstances surrounding its making. This point is illustrated by comparing *Mayfair Merchandise Co. v. Wayne* and *First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr, Inc., supra.* In *Mayfair Merchandise Co.,* the lease required the tenant to "make all necessary repairs, structural or otherwise, interior or exterior" and to comply with all statutes, ordinances, and other governmental requirements "for correction, prevention, and abatement of nuisances or other grievances." 415 F.2d at 24. The court, invoking the general rules set forth in the preceding paragraph, held that the tenant was not obligated to bear the cost of complying with a city fire department order requiring installation of a fire protection sprinkler system and proper enclosure of a wooden

stairway. *Mayfair Merchandise Co.*, 415 F.2d at 25. However, in *First Nat'l Stores, Inc.*, where the fire department directed the owner of a shopping center to install a fire protection sprinkler system in the basement of a supermarket, the court found that the tenant was obligated to bear the cost of installation. The fire department order did not apply to any other stores in the shopping center and, while the lease provided that the owner was required to make all alterations required by governmental authorities, the lease also provided that the tenant was responsible for alterations required by governmental authorities "as a result of [tenant's] specific use of the premises." *First Nat'l Stores, Inc.*, 237 N.E.2d at 870. Compare also *Hadian v. Schwartz, supra*, which held the owner responsible for seismic reconstruction of a building ordered by the city as part of an earthquake hazard reduction program even though the lease contained a "compliance with laws" clause and was labelled a "net lease," with *Brown v. Green, supra*, which held the tenant responsible for removing asbestos pursuant to county order under a lease with terms virtually identical to those at issue in *Hadian v. Schwartz*. *Hadian v. Schwartz* and *Brown v. Green* were decided by the California Supreme Court on the same day. In explaining the difference between the two cases, the *Brown* court said:

> Thus, although broadly applicable criteria for determining the repair and compliance with laws obligations of the parties to a nonresidential lease can be articulated, it does not follow that the outcome in a particular case can be easily forecast on the basis of the text of the lease alone. Each agreement must be evaluated in light of its individual terms under generally applicable contextual criteria and the principle of reasonable construction.

35 Cal.Rptr.2d at 601, 884 P.2d at 58.

### B

 We disagree with the conclusion of the Court of Appeals that "the terms of the lease unambiguously place responsibility for keeping all of the leased premises, including the sprinkler system, in proper operating condition upon [tenant]." *Fresh Cut, Inc.*, 630 N.E.2d at 580. Indeed, we find the placement of the sprinkler system responsibility highly ambiguous. First, the lease allocates responsibility for maintenance of electrical systems, heating and air conditioning systems, and structural frame to tenant but apparently allocates responsibility for maintenance and repair of the roof, exterior walls, and foundation to owner.[4] It is not unambiguously clear into which of these two groups the sprinkler system falls, and since a covenant merely to repair does not carry with it a requirement to make permanent, substantial, or unforeseen building additions or alterations, *Quebe*, 586 N.E.2d at 916, this ambiguity alone cannot be resolved against the tenant.[5] Second, there is no explicit mention of the sprinkler system in the lease but the nature of the obligation asserted against tenant here resembles indemnification, and indemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms. *Wilson Leasing Co. v. Gadberry* (1982), Ind.App., 437 N.E.2d 500, 501. Third, the lease was drafted by owner, and an ambiguous contract will be construed against its drafter. *Falley v. Giles* (1867), 29 Ind. 114, 115; *Tarrant v. Self* (1979), 180 Ind.App. 215, 387 N.E.2d 1349, 1353. Lastly, there is evidence here that owner did not acknowledge that he had any legal duty to maintain the building's sprinkler system in good operating condition. This certainly could give rise to an inference that, because owner did not recognize any responsibility for maintaining the sprinklers, he did not delegate that responsibility in the contract.

 While we reject the Court of Appeals conclusion that the lease unambiguously placed responsibility for the sprinkler system on the tenant, we also reject tenant's claim that this responsibility clearly re-

---

4. See note 1, *supra.*

5. Nor can it be said as a matter of law that the covenant to comply with laws here carries with it a requirement to make such additions or alterations. *See* Annotation, 22 A.L.R.3d at 543 and cases cited therein; *Hadian*, 35 Cal.Rptr.2d at 593, 884 P.2d at 50; *Mayfair Merchandise Co.*, 415 F.2d at 25. *First Nat'l Stores, Inc.*, 237 N.E.2d at 870.

mained with the owner. If a contract is ambiguous solely because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the trial court. *First Fed. Sav. Bank of Indiana v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 604. Here, however, while the contract is ambiguous and uncertain in its terms,[6] we believe that the meaning of the contract may well need to be determined by extrinsic evidence. As such, its construction is a matter for the factfinder. *Id.* Rules of contract construction and extrinsic evidence need to be employed to determine and give effect to the parties' reasonable expectations. *Id.* Under such circumstances, resolution of this issue is inappropriate for summary judgment.

### Conclusion

We agree with the trial court that summary judgment in favor of tenant on owner's breach of contract counterclaim was inappropriate in that the lease is not void as against public policy and issues of material fact remain as to whether owner or tenant is responsible for maintaining the sprinkler system under the lease. We grant transfer, vacate the decision of the Court of Appeals, Ind.Appellate Rule 11(B)(3), and remand this case to the trial court for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., dissents with separate opinion, in which SELBY, J., concurs.

DeBRULER, Justice, dissenting.

In this case, Fresh Cut, Inc. agreed in August 1986, to lease an uninhabitable building owned by Fazli. Only the lease's alleged sprinkler maintenance requirement made the building legally fit for use. During the term of the lease, after repeated warnings to Fazli from the Marion County Fire Department, the worst finally happened: in 1989 the building burned down, imposing losses on both Fazli and Fresh Cut.

Now, after having benefitted substantially from this lease, Fazli wishes to benefit yet again. Specifically, after having received approximately $100,000 in rent, he wants this Court to declare that a landlord may delegate his duty to maintain fire prevention devices, like the sprinklers in this case, to a tenant, so that Fazli may receive an additional $200,000 (or more) in insurance proceeds. Unfortunately, a majority of this Court is ready to do precisely that, denying that there exists any public policy reason for voiding a contract which purports to delegate such duty.

The majority correctly identifies the factors that are relevant when deciding whether to enforce a contract where it arguably violates public policy: (1) the subject matter of the contract; (2) the strength of the public policy underlying the statute; (3) the likelihood that refusal to enforce the contract will further that policy; (4) the seriousness and justness of any forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power. These are similar to the factors in the old *Tunkl* test, but, since the California Supreme Court was applying a statute, the factors are not identical. *See Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal. Rptr. 33, 35, 383 P.2d 441, 443 (1963). However, it is worth observing that in our most recent relevant case, *Straub v. Todd* (1994), Ind., 645 N.E.2d 597 (parent cannot contractually delegate his child support obligation because of important public policy, i.e., ensuring child's ability to receive support from two parents), only the first two factors were discussed explicitly, while the last two were discussed not at all.

The court errs in its application of those factors to this case. While the maintenance of fire prevention equipment may not be a unique subject for a contract, the public policy of ensuring such maintenance is overwhelming, evidenced by the penalty assessed upon conviction for non-maintenance. *See*

---

6. Indeed, in its papers supporting its petition to this court, tenant argues that "at a minimum" the lease is ambiguous. Br. of Appellant at 30.

Indianapolis and Marion Co., IN, Code § 1–8. The Indianapolis Code incorporates by reference N.F.P.A. 13, Standard for the Installation of Sprinkler Systems, and 13A, Inspections, Testing and Maintenance of Sprinkler Systems (National Fire Prevention Ass'n 1987). Code of Indianapolis, § 12–4. N.F.P.A. 13 states, in pertinent part, "The owner is responsible for the condition of the sprinkler system...." N.F.P.A. 13A says, "The responsibility for properly maintaining a sprinkler system is the obligation of the owners of the property."

The willingness of the public to impose criminal liability on a violator is certainly strong evidence of a weighty public policy. Refusing to enforce this contract would ensure that other owners carefully check their holdings to insure that the fire prevention systems are adequate and would do no more than put Fazli in the situation that he should have been in, i.e., responsible for his own losses that were due to the fire. I believe that the parties bargaining power was about equal, so that factor is not particularly important. This contract was an obvious attempt to avoid the important public policy of requiring owners to maintain essential fixtures upon their property. *See Vandalia R.R. Co. v. Fort Wayne and N. Ind. Traction Co.* (1918), 68 Ind.App. 120, 118 N.E. 839.

I dissented in *Straub*, precisely because the majority was too quick to dismiss the contract. In *Straub*, we looked with kindness upon, and voided the contract made by, a woman who, according to this Court's interpretation of the facts, attempted to trade her daughter's right to child support for sex. Should we be less solicitous towards a Hoosier business like Fresh Cut?

SELBY, J., concurs.