20 F.3d 882
 In re CPT CORPORATION, Debtor.
CPT CORPORATION, Appellant,
v.
DAEWOO INTERNATIONAL (AMERICA) CORPORATION, Appellee.
 No. 93-1945.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1993.
Decided April 4, 1994.
 
 Dylan J. McFarland, Minneapolis, MN, argued, for appellant.
 Kim Anderson, Minneapolis, MN, argued (Brian Palmer, Minneapolis, MN, and David Hardy, New York City, on the brief), for appellee.
 Before JOHN R. GIBSON* and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WOODS,** District Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 CPT Corporation ("CPT") appeals a district court[1] decision to reverse in part and affirm in part a decision of a bankruptcy court with respect to a claim filed by Daewoo International (America) Corporation ("Daewoo"). The bankruptcy court allowed Daewoo's claim, but also awarded damages to CPT in excess of it. The district court affirmed the decision to allow Daewoo's claim, but reversed the award of damages to CPT. At issue is whether a lessor is responsible, under New York law and the lease in this case, for asbestos abatement required only in the event the tenant decides to alter the space in order to sublease it. We hold that it is not and therefore affirm.
 
 I.
 
 2
 In 1983, CPT entered into an agreement to sublease from Daewoo space on the 23rd floor of an office building located in mid-town Manhattan for nearly ten years. Daewoo possessed the 23rd and 24th floors of the building by virtue of a lease ("the basic lease"). In late 1985, the City of New York enacted a law ("the ordinance") mandating asbestos abatement measures in the event that any portion of a building was substantially renovated. The ordinance did not require abatement, however, until such asbestos disturbing renovation was attempted. The building, including the premises, contains asbestos, so that any substantial renovation of the premises would trigger application of the law.
 
 
 3
 CPT's need for office space began to decrease because of declining business sales. By the end of 1986, CPT felt that it needed only one half to two thirds of the space leased from Daewoo. To reduce its overhead, CPT began efforts to assign or sublet the premises so that it could relocate to smaller, less expensive space. These efforts were frustrated, however, by the prohibitive cost of compliance with the asbestos abatement ordinance. Most potential subtenants required some reconfiguration of the premises, which could not be done without triggering the ordinance.
 
 
 4
 CPT contacted Daewoo and orally demanded that Daewoo assume responsibility for any asbestos abatement mandated by the ordinance. Daewoo refused. Later, CPT twice gave Daewoo written notice of its inability to find a new tenant for the premises and demanded that Daewoo either remove the asbestos in the premises or agree to terminate the sublease and release CPT from any further obligations under it. CPT also claimed that it had incurred, and would continue to incur, lost rental income as a result of its inability to sub-sublease the premises. On both occasions, Daewoo responded by letter stating that "Daewoo continues its position that your claim is without merit and must be denied." CPT eventually sublet the space in late March, 1989, when it entered into an agreement with the Institute for International Research ("IIR"). IIR agreed to lease the premises "as is," without substantial renovation that would trigger the asbestos abatement ordinance. In June, 1989, CPT vacated and IIR began occupying the premises. The IIR sub-sublease provided for rent at an annual rate less than that provided for in CPT's lease with Daewoo. From this point forward, CPT paid no rent to Daewoo in addition to that paid by IIR.
 
 
 5
 CPT filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in October, 1990. CPT thereafter gave notice of its intent to reject the sublease pursuant to 11 U.S.C. Sec. 365(g). Daewoo subsequently filed its proof of claim against CPT for damages from CPT's Sec. 365 rejection of the sublease. CPT then filed a complaint commencing an adversary proceeding seeking the disallowance of Daewoo's claim against CPT and damages from Daewoo for its refusal to take responsibility for asbestos abatement.
 
 
 6
 The bankruptcy court granted CPT summary judgment on the issue of whether Daewoo was obligated to remove the asbestos in the premises. The bankruptcy court also found that Daewoo was entitled to $552,532.26 in damages for CPT's Sec. 365 rejection of the sublease. Finally, the bankruptcy court found that CPT was entitled to $1,416,405.43 in damages for Daewoo's failure to remove the asbestos. After offsetting Daewoo's damages against CPT's damages, the bankruptcy court entered judgment for CPT in the amount of $863,873.17. Daewoo appealed to the district court, which affirmed the damages awarded Daewoo, while reversing those awarded CPT. This appeal followed.
 
 II.
 
 7
 The first and central issue before us is whether Daewoo had an obligation to perform asbestos abatement procedures. Determination of where this obligation lay is a legal question, which is reviewed here de novo. For resolution of this issue, we are required to look to the terms of the sublease between the parties and the law of New York, settling the question as we believe the New York Court of Appeals would. See B.B. v. Continental Insurance Company, 8 F.3d 1288, 1294 (8th Cir.1993).
 
 
 8
 The parties, when negotiating the sublease, probably could not have foreseen the supervening event of the passage of the asbestos abatement ordinance. This does not preclude the possibility, however, that the terms negotiated allocated risks between the parties in such a way as to account for this event.
 
 
 9
 Article First of the sublease incorporates certain terms of the basic lease. Of those, two are relevant for an analysis of the issues before us. First, Section 8.01 of the basic lease provides that CPT "shall, at its expense, comply with all ... ordinances ... which shall ... impose any ... duty upon Landlord or Tenant arising from Tenant's occupancy, use or manner of use of the Demised Premises." Second, Section 8.04 of the basic lease, though somewhat difficult to decipher, provides that the Landlord is obligated to comply with "all ... ordinances ... which ... impose any ... duty upon Landlord or Tenant and with respect to which Tenant is not obligated by Section 8.01 to comply" if the ordinance "affect[s] Tenant's use, enjoyment or access, of [sic] the Demised Premises." We note that, read together, these clauses seem to divide responsibilities in such a way as to impose on tenant the duty to comply if tenant's use causes the occasion to comply.
 
 
 10
 This, indeed, has been the consistent approach of the New York courts. While the New York Court of Appeals has not yet directly addressed the issue before us, the Appellate Division of the New York Supreme Court has twice dealt with the relevant ordinances and governmental compliance clauses similar to those in the lease before us. In the most recent case, Linden Boulevard, L.P. v. Elota Realty Company, 196 A.D.2d 808, 601 N.Y.S.2d 949 (1993), the tenant developer bought a lease with the intention of renovating a store to permit operation of a flea market and other retail stores. The court held that the landlord was responsible for the asbestos abatement required by the New York City ordinance. Id. The court reasoned that because "the abatement of [the] hazardous condition was required for any use of the building by any tenant," the asbestos removal ordinance was not triggered by the tenant's specific use. Id. 601 N.Y.S.2d at 954. The other case dealing directly with this issue is Wolf v. 2539 Realty Associates, 161 A.D.2d 11, 560 N.Y.S.2d 24 (1990). In that case, the tenant leased the first four floors and a basement parking garage of a building constructed with asbestos coating on its structural steel members. The court held that the landlord was responsible for the abatement of the hazardous condition. Id. 560 N.Y.S.2d at 28. The court reasoned that because the premises could not "be safely put to any use without removal or encapsulation of the [asbestos-containing material], the necessity to comply with [the ordinance] cannot be said to arise out of the particular use made of the premises by the tenant, nor to be his responsibility." Id. 560 N.Y.S.2d at 27-28.
 
 
 11
 We believe that the rule articulated by the courts of New York, with respect to the asbestos abatement ordinance and the governmental compliance clauses involved in this case, is that the landlord is responsible for asbestos abatement only when the premises cannot safely be used by any tenant for any purpose until removal is completed.
 
 
 12
 CPT maintains that its circumstances are indistinguishable from those of the lessee in Rapid-American Corp. v. 888 7th Avenue Associates Limited Partnership, 151 Misc.2d 966, 574 N.Y.S.2d 447 (N.Y.Sup.Ct.1991). That lessee entered into a long term lease for the 25th through 44th floors of an office building for the purpose of subletting to various subtenants. The court's decision turned on whether "the tenant could use the demised premises in the manner contemplated by the lease." Id. 574 N.Y.S.2d at 452. The court held that the landlord was responsible for the asbestos abatement because the premises were not suited for the very use contemplated by the lease. Id. CPT believes itself to be in the same position as the tenant in Rapid-American because, while subletting was not the central purpose for which the lease was secured, it was an expressly articulated contractual right. The existence of this right, the argument runs, demonstrates that subletting was a use contemplated when the lease was negotiated and drafted.
 
 
 13
 This argument fails to persuade us for two reasons. First, while the lessee of Rapid-American could not conduct its business at all without the asbestos abatement, CPT could and did sublet the premises without asbestos removal. This fact reduces CPT's argument to one that the refusal to conduct asbestos abatement kept its investment less marketable than it might have been had the removal taken place. But no clause in the lease says that Daewoo was responsible for making CPT's lease as marketable as possible. Since CPT could and did conduct the use contemplated by the lease, its situation does not square with that of the lessee in Rapid-American.
 
 
 14
 The second reason that we find CPT's reliance upon Rapid-American to be misplaced is that an appellate court of the State of New York subsequently relied upon it to hold a landlord responsible when the premises required abatement before the tenant could use them for any purpose. Linden Boulevard, 601 N.Y.S.2d at 952. That court appears to have read Rapid-American as narrowly as we do here.
 
 III.
 
 15
 The second issue raised on appeal by CPT is whether the district court erred by entering a judgment for money damages for Daewoo rather than simply allowing its claim in CPT's bankruptcy proceedings. Both parties are in agreement that the amount of $552,532.26 entered in the district court's order should represent the amount of Daewoo's allowed claim rather than an award of damages.
 
 
 16
 The district court's order of February 23, 1993 instructs the clerk of that court to enter judgment as follows:
 
 
 17
 IT IS ORDERED, ADJUDGED, AND DECREED That plaintiff Daewoo International (America) Corporation have and recover from CPT Corporation the sum of $552,532.26.
 
 
 18
 The text of the order appears to reveal the court's understanding that Daewoo was entitled to a claim for the amount of the award. This can be inferred from the concluding sentence of the court's analysis, where it agrees with the bankruptcy court's conclusion "that Daewoo was entitled to $552,532.26 under section 502(b)(6)." That section of chapter 11 of the United States Code deals with calculation of claims allowed for claims filed by lessors for damages arising from the termination of a lease. To the extent that this understanding is unclear, we remand this matter to the district court for the sole purpose of amending its order to make clear that the amount mentioned represents the claim allowed Daewoo in CPT's bankruptcy proceedings.
 
 IV.
 
 19
 For the foregoing reasons, we affirm the judgment of the district court, and remand its order for amendment to remove ambiguity arising from its wording.
 
 
 
 *
 The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 1, 1994, before the opinion was filed
 
 
 **
 The Honorable Henry Woods, District Judge, United States Court for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The Honorable Donald D. Alsop, Senior Judge, United States Court for the District of Minnesota